PRESENT: Lemons, C.J., Goodwyn, McClanahan, Powell, and Kelsey, JJ., and Russell and Millette, S.JJ.

JAMES B. THORSEN, ET AL.

v. Record No. 150528

OPINION BY
SENIOR JUSTICE LEROY F. MILLETTE, JR.
June 2, 2016

RICHMOND SOCIETY FOR THE
PREVENTION OF CRUELTY TO
ANIMALS

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Paul M. Peatross, Judge Designate

This appeal concerns whether an intended third-party beneficiary of a will contract, who failed to successfully take under the will instrument due to the drafting attorney's error, may sue the attorney for malpractice.

## I. FACTS AND PROCEEDINGS

In 2003, Alice Louise Cralle Dumville, then a resident of Chesterfield County, met with James B. Thorsen, an attorney, at his office in Richmond, Virginia, in order to prepare her last will and testament. At the end of the initial meeting, Thorsen understood that Dumville wanted him to prepare a will that would, upon her death, convey all of her property to her mother if her mother survived her, and, in the event her mother predeceased her, to the Richmond Society for the Prevention of Cruelty to Animals ("RSPCA"). At the time, Dumville was forty-three and her mother was in her late seventies or early eighties. Dumville lived with three cats, which she desired to go to the RSPCA upon her death.

Thorsen prepared the will. At no time in the preparation of the will did Thorsen provide any tax advice, such as attempting to minimize tax burdens on the estate. On April 16, 2003, Thorsen wrote a letter to Dumville informing her of the completion of her will, and Dumville executed the will as drafted by Thorsen.

Dumville died on May 16, 2008, her mother having predeceased her. Thorsen, in his capacity as co-executor of the estate, notified the RSPCA that it was the sole beneficiary of Dumville's estate. Thorsen was subsequently informed that, in the opinion of the title insurance company, the will left only the tangible estate, not real estate, to the RSPCA.

Thorsen brought suit in a collateral proceeding to correct this "scrivener's error" based on Dumville's clear original intent. The Circuit Court of Chesterfield County, however, found the language unambiguously limited the bequest to the RSPCA to tangible personal property, while the intangible estate passed intestate to Dumville's heirs at law, Helen Boyle and Kathleen Davis. Thorsen v. Boyle, Rec. No. CL09-718 (April 9, 2010) (unpublished).

On April 14, 2011, the RSPCA brought suit against James B. Thorsen, Thorsen & Scher, LLP, and James B. Thorsen, P.C. (collectively, "Thorsen") for breach of contract-professional negligence, as a third-party beneficiary of the contract between Thorsen and Dumville. Thorsen demurred, arguing, among other things, that: (1) the RSPCA was not an intended third-party beneficiary of the contract and Thorsen undertook no obligation on its behalf, and so he could not be liable to the RSPCA; and (2) in the Commonwealth, an action by a third-party beneficiary arises under Code § 55-22 and requires a written agreement. Additionally, Thorsen filed a plea in bar premised on the statute of limitations. The circuit court overruled the demurrer and denied the plea in bar.

At trial, the parties stipulated that Thorsen, as Dumville's attorney, had a duty to incorporate her intent into her will accurately and that he did not accurately incorporate her intent as to the disposition of real property to the RSPCA. The RSPCA received $72,015.60 from the tangible estate, but the ultimate bequest, less expenses, would have totaled $675,425.50 absent the error.

2

The circuit court admitted Thorsen's testimony from the previous collateral proceedings regarding his understanding of Dumville's intent. After considering both this evidence and trial testimony, the court found for the RSPCA. The final order incorporated the proposed findings of fact and conclusions of law offered by the RSPCA and found damages for the RSPCA in the amount of $603,409.90. Thorsen now appeals.

## II. DISCUSSION

### A. Requirement of a Written Contract

Thorsen assigns error to the circuit court's "ruling that Virginia Code § 55-22 applied to the oral contract between Alice Louise Cralle Dumville and James B. Thorsen." We agree with Thorsen that Code § 55-22 does not apply to the oral contract between Dumville and Thorsen. However, we do not agree that this is fatal to the RSPCA's claim.

This issue of statutory interpretation presents a pure question of law which we review de novo. Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Id. (internal citations omitted).

Code § 55-22 states:

An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise.

3

Thorsen argues that the language of Code § 55-22 refers to the third-party beneficiary of an "instrument." An instrument is a "<u>written</u> legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." Black's Law Dictionary 918 (10th ed. 2014) (emphasis added). Thorsen therefore contends that, under the plain language of the statute, the oral nature of the contract in question is fatal to the RSPCA's cause of action, and the RSPCA has no recourse.

The parties do not dispute, nor can they in good faith, that the plain meaning of the term "instrument" as employed in this statute refers to a written document. Because the benefit to the third-party referred to in the first phrase of the statute derives from an "instrument," Code § 55-22 must refer to a benefit from a written document. This interpretation is bolstered by the second half of the statute: although the term "covenant or promise" is not preceded by a modifier specifying "written," it is nonetheless closely followed by reference to "<u>the</u> instrument" (emphasis added). The definite article makes clear that the source of the benefit referred to in this statute must be a written agreement or other benefit that is memorialized in a written document.

While we agree with Thorsen's construction of the statute, we cannot agree that this statute abrogates the common law so as to prohibit the ability of third-party beneficiaries to sue upon oral contracts. We have previously noted:

> At common law,
>
>> the general rule was that, whether the contract was express or implied, by parol or under seal, or of record, the action must be brought in the name of the party in whom the legal interest was vested, and that this legal interest was vested in the person to whom the promise was made, and consequently that he or his privy was the only person who could sue in a court of law upon such contract.

4

> Thacker v. Hubard, 122 Va. 379, 387, 94 S.E. 929, 931 (1918); accord, Cemetery Cons[ultants] v. Tidewater Fun. Dir., 219 Va. 1001, 1003, 254 S.E.2d 61, 62 (1979). However, "in contracts not under seal, it has been held, for two centuries or more, that any one for whose benefit the contract was made may sue upon it." Thacker, 122 Va. at 387, 94 S.E. at 931 (emphasis in original).

Ward v. Ernst & Young, 246 Va. 317, 329, 435 S.E.2d 628, 634 (1993). Oral contracts are not under seal, and the Court has never held, in the centuries prior to Thacker or the century since, that the oral nature of a contract limits a third-party beneficiary's ability to sue upon it.

Code § 55-22 is silent as to oral contracts. By its plain terms, it applies only to written contracts. Its enactment therefore does not affect the ability of a third-party beneficiary to bring a common law action based on an oral contract made for his or her benefit, which remains intact.

Additionally, "statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogenous system, or a single and complete statutory arrangement." Prillaman v. Commonwealth, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957) (quoting 50 Am. Jur. Statutes § 349). Code § 11-2, entitled "When written evidence required to maintain action," more commonly known as the Statute of Frauds, sets forth limitations on oral contracts under some circumstances. A third-party beneficiary cannot sue upon an oral promise to answer for his or her debt, for example. Code § 11-2(4). However, there is no prohibition in Code § 11-2 on the ability of third-party beneficiaries to sue upon oral contracts generally. To so hold would be to judicially amend the Statute of Frauds, an action we decline to take.

Neither the complaint in this case nor the final order invoke or rely on Code § 55-22. This issue is raised only on demurrer by Thorsen, who sought to apply Code § 55-22 due to his belief that it prohibited oral contracts and no common law cause of action existed.

Because the RSPCA had the authority to proceed under common law as a third-party beneficiary of an oral contract, and the circuit court had the authority to enter judgment

5

accordingly, and nothing in the pleadings frustrates this authority, we therefore conclude that the demurrer was properly overruled and proceed to the next assignment of error.

B. Standing

Thorsen next assigns error to the circuit court's holding that the RSPCA has standing to sue for breach of contract while not party to the attorney-client relationship. Standing is a question of law which we review de novo. Kelley v. Stamos, 285 Va. 68, 73, 737 S.E.2d 218, 220 (2013).

This assignment of error requires us to consider two legal components: first, whether Virginia recognizes a cause of action for breach of contract against attorneys by third-party testamentary beneficiaries, and, if so, whether the RSPCA's pleadings were sufficient to accord it standing as a third-party beneficiary of the attorney-client contract.

1. The Cause of Action

While, as a general rule, strangers to a contract acquire no rights under such contract, third-party beneficiary contracts represent a well-recognized exception in our law under which a nonparty can nevertheless enforce the contract under certain circumstances. 13 Williston on Contracts § 37:1, at 14-15 (Richard A. Lord ed., 4th ed. 1990 & 2013 rev.); see supra Part II.A. A primary rationale for supporting third-party beneficiary claims was that donee contracts, of which testamentary instruments are one example, otherwise could rarely be enforced, as the promisee could recover only nominal damages upon nonperformance: "The party to the contract would have no action for its breach except nominal damages since he was not the one who suffered by the promisor's default. If the beneficiary could not sue there could be no adequate recovery even though the breach was established." Isbrandtsen Co. v. Local 1291 of Int'l Longshoremen's Ass'n, 204 F.2d 495, 497 (3d Cir. 1953). Thus, "through this travail . . . the

6

common law has given birth to a distinct, new principle of law which takes its own place in the

family of legal principles, and gives not only to a donee beneficiary, but also to a creditor

beneficiary, the right to enforce directly the promise from which he derives his interest." Id.

(quoting 2 Williston on Contracts § 357 (rev. ed. 1936) (alteration omitted). "[A]s stated in one

leading decision: 'The tendency of American authority is to sustain the gift in all such cases and

to permit the donee-beneficiary to recover on the contract.'" 13 Williston on Contracts § 37:13,

at 134 (Richard A. Lord, ed., 4th ed. 2013) (quoting Seaver v. Ransom, 120 N.E. 639 (N.Y.

1918)).

The Supreme Court of the United States held in National Savings Bank v. Ward, 100

U.S. 195, 205-07 (1880), that a bank could not recover as against an attorney for negligence in

examining title to the property when the attorney's clients and not the bank had retained the

attorney to conduct the title search, due to lack of privity between the attorney and the bank:

> Beyond all doubt, the general rule is that the obligation of the attorney is to his
> client and not to a third party, and unless there is something in the circumstances
> of this case to take it out of that general rule, it seems clear that the proposition of
> the defendant must be sustained.
>
> . . . .
>
> Analogous cases . . . show to a demonstration that it is not every one who suffers
> a loss from the negligence of another that can maintain a suit on such grounds.
> On the contrary, the limit of the doctrine relating to actionable negligence, says
> Beasley, C. J., is, that the person occasioning the loss must owe a duty, arising
> from contract or otherwise, to the person sustaining such loss.

Id. at 200, 202 (citation omitted). While this rule remains throughout many aspects of the

attorney-client relationship, courts in the majority of our sister states have recognized some form

of cause of action against negligent drafters of estate instruments by frustrated beneficiaries,

through contract or tort principles, or both.[1] In Virginia, "an action for the negligence of an

---

[1] See, e.g., Fickett v. Super. Ct., 558 P.2d 988, 990 (Ariz. Ct. App. 1976); Lucas v. Hamm, 364 P.2d 685, 689 & n.2 (Cal. 1961); Stowe v. Smith, 441 A.2d 81, 84 (Conn. 1981);

7

attorney in the performance of professional duties, while sounding in tort, is an action for breach of contract." Oleyar v. Kerr, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976). In the Commonwealth, the cause of action alleged today therefore lies in contract, and the exception to the privity rule lies there as well.

Indeed, this Court is among those which have previously addressed the privity requirement in terms of the attorney-client relationship in Copenhaver v. Rogers, 238 Va. 361, 384 S.E.2d 593 (1989), in which grandchildren who were remaindermen under their grandparents' testamentary trust were precluded from bringing a legal malpractice action. The fatal aspect of the claim, however, was that they had asserted they were intended beneficiaries of the estate rather than intended beneficiaries of the contract. Id. at 369, 371, 384 S.E.2d at 597-98.

"In order to proceed on the third-party beneficiary contract theory, the party claiming the benefit must show that the parties to a contract 'clearly and definitely intended' to confer a benefit upon him." Id. at 367, 384 S.E.2d at 596 (citing Allen v. Lindstrom, 237 Va. 489, 500, 379 S.E.2d 450, 457 (1989)). While a party may reap a benefit from an estate, such party may

---

Needham v. Hamilton, 459 A.2d 1060, 1062 (D.C. 1983); Passell v. Watts, 794 So.2d 651, 652-53 (Fla. Dist. Ct. App. 2001); Blair v. Ing, 21 P.3d 452, 462 (Haw. 2001); Ogle v. Fuiten, 466 N.E.2d 224, 226 (Ill. 1984); Walker v. Lawson, 526 N.E.2d 968, 968 (Ind. 1988); Schreiner v. Scoville, 410 N.W.2d 679, 682 (Iowa 1987); Woodfork v. Sanders, 248 So.2d 419, 425 (La. Ct. App. 1971); Pizel v. Zuspann, 795 P.2d 42, 51 (Kan. 1990); Mieras v. DeBona, 550 N.W.2d 202, 211 (Mich. 1996); Francis v. Piper, 597 N.W.2d 922, 924 (Minn. Ct. App. 1999); Donahue v. Shughart, Thomson & Kilroy, P.C., 900 S.W.2d 624, 629 (Mo. 1995); Simpson v. Calivas, 650 A.2d 318, 322 (N.H. 1994); Leak-Gilbert v. Fahle, 55 P.3d 1054, 1062 (Okla. 2002); Hale v. Groce, 744 P.2d 1289, 1292 (Or. 1987); Guy v. Liederbach, 459 A.2d 744, 746 (Pa. 1983); Fabian v. Lindsay, 765 S.E.2d 132, 141 (S.C. 2014); Persche v. Jones, 387 N.W.2d 32, 35-36 (S.D. 1986); Powers v. Hayes, 776 A.2d 374, 375 (Vt. 2001); Auric v. Continental Casualty Co., 331 N.W.2d 325, 328 (Wis. 1983); Stangland v. Brock, 747 P.2d 464, 467-68 (Wash. 1987). See also Riser v. Livsey, 227 S.E.2d 88, 89 (Ga. Ct. App. 1976); Hargett v. Holland, 447 S.E.2d 784, 786 (N.C. 1994); Jaramillo v. Hood, 601 P.2d 66, 67 (N.M. 1979) (recognizing a cause of action but finding that the statute of limitations had run).

8

not proceed in Virginia against one who negligently drafted testamentary documents without showing that the party was a "clearly and definitely intended" beneficiary of the contract to draft the testamentary documents. Id. at 368-69, 384 S.E.2d at 596-97. By way of illustration, the Court in Copenhaver offered these polar hypotheticals:

> There is a critical difference between being the intended beneficiary of an estate and being the intended beneficiary of a contract between a lawyer and his client. A set of examples will illustrate the point: A client might direct his lawyer to put his estate in order and advise his lawyer that he really does not care what happens to his money except that he wants the government to get as little of it as possible. Given those instructions, a lawyer might devise an estate plan with various features, including inter vivos trusts to certain relatives, specific bequests. . . [and] many people and institutions might be beneficiaries of the estate, but none could fairly be described as beneficiaries of the contract between the client and his attorney because the intent of that arrangement was to avoid taxes as much as possible. By contrast, a client might direct his lawyer to put his estate in order and advise his lawyer that his one overriding intent is to ensure that each of his grandchildren receive one million dollars at his death and that unless the lawyer agrees to take all steps necessary to ensure that each grandchild receives the specified amount, the client will take his legal business elsewhere. In this second example, if the lawyer agrees to comply with these specific directives, one might fairly argue each grandchild is an intended beneficiary of the contract between the client and the lawyer.

Id. Because the Copenhavers "never alleged that their grandparents and Rogers entered a contract of which they were intended beneficiaries," they had no claim. Id.

The above authority reflects this Court's understanding, nearly three decades ago, that the specific agreement between a testator client and an attorney concerning the drafting of a will could establish an intended third-party beneficiary, while specifically acknowledging the difficulty in proving third-party beneficiary status under such circumstances. Id. at 371, 384 S.E.2d at 598.

"The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his part of the bargain." Id. at 367, 384 S.E.2d at 596. In short, there is an agreement

9

out of which arises an obligation to benefit a third party, the breach of which causes damages to that third party. Accordingly, "where the intent to benefit the plaintiff is clear and the promisee (testator) is unable to enforce the contract," our precedent recognizes a cause of action among the narrow class of third-party beneficiaries to enforce claims which would otherwise have no recourse for failed legacies resulting from attorney malpractice. Fabian v. Lindsay, 765 S.E.2d 132, 140 (S.C. 2014) (quoting Guy v. Liederbach, 459 A.2d 744, 747 (Pa. 1983)).

Four years later, our holding in Ward v. Ernst & Young reinforced this understanding. In Ward, in the context of accountants, this Court permitted the privity requirement to be satisfied by a showing that a nonparty is a third-party beneficiary of the contract: the Court held that the circuit court had improperly granted a motion to strike plaintiff's evidence at the close of plaintiff's proof on the amended pleading, because the evidence, taken in the light most favorable to the plaintiff, "was fully sufficient to raise a jury question" on the claim that the contracting parties intended to benefit the plaintiff. 246 Va. at 332, 435 S.E.2d at 636. See Bank of Am. v. Musselman, Bowling, Franklin & Co., 240 F.Supp. 2d 547, 553-54 (E.D. Va. 2003) ("[P]rivity of contract is required where, as here, a non-party to a contract for . . . accounting services seeks damages for an economic loss resulting from the accountant's allegedly negligent performance. . . . [H]owever, the privity requirement may be satisfied through a showing by the non-party that he is a third-party beneficiary of the contract." (citing Ward and other Virginia authority)).[2] In Ward, the Court also declined to distinguish between attorneys and accountants as to privity requirements, because both are "licensed to invite the

---

[2] While it has become commonplace for American courts to adopt the language that the third-party beneficiary relationship establishes privity, in that it implies the necessary obligation, it is more precise to state that the relationship dispenses with the need for strict privity. 13 Williston on Contracts § 37:1, at 24 (Richard A. Lord ed., 4th ed. 1990 & 2013 rev.) (citing Anderson v. Rexroad, 266 P.2d 320 (Kan. 1954)).

public to rely on their professional competence, and they are regulated and disciplined in the performance of services to those who accept their invitation." 246 Va. at 326, 435 S.E.2d at 632.

Thorsen argues that Johnson v. Hart, 279 Va. 617, 692 S.E.2d 239 (2010), overrules Copenhaver. Yet Johnson applies specifically to an attempt to bring suit under Code § 8.01-13, pertaining to assigns and beneficial owners. The appeal concerned whether a sole testamentary beneficiary could bring a legal malpractice action in her own name against the attorney for the estate for negligent services rendered. Id. at 622, 692 S.E.2d at 240. Because the attorney-client relationship existed between the attorney and the estate, id. at 621, 692 S.E.2d 241, Johnson never argued that she was an intended third-party beneficiary. Johnson sought to bring suit as a beneficial owner under Code § 8.01-13, but the Court found that such action was barred by the rule prohibiting assignment of legal malpractice actions in the Commonwealth. Id. at 626, 692 S.E.2d at 244. We thus find the holding in Johnson inapplicable to the question before this Court today.

"[I]mposing an avenue for recourse in the beneficiary, where the client is deceased, is effectively enforcing the client's intent, and the third party is in privity with the attorney." Fabian, 765 S.E.2d at 140 (recognizing legal malpractice cause of action in estate planning derived on a third-party beneficiary theory, among other theories). Indeed, many of our sister states recognize that contracts made for the benefit of a third-party testamentary beneficiary provide that party with a cause of action against an attorney for damages incurred due to breach of contract in the nature of professional negligence. See, e.g., Lucas v. Hamm, 364 P.2d 685, 689 & n.2 (Cal. 1961); Stowe v. Smith, 441 A.2d 81, 84 (Conn. 1981); Blair v. Ing, 21 P.3d 452, 462 (Haw. 2001); McLane v. Russell, 546 N.E.2d 499, 501-502 (Ill. 1989); Walker v. Lawson,

11

526 N.E.2d 968, 968 (Ind. 1988); Woodfork v. Sanders, 248 So.2d 419, 425 (La. Ct. App. 1971); Simpson v. Calivas, 650 A.2d 318, 322 (N.H. 1994); Leak-Gilbert v. Fahle, 55 P.3d 1054, 1062 (Okla. 2002); Hale v. Groce, 744 P.2d 1289, 1292 (Or. 1987); Guy v. Liederbach, 459 A.2d 744, 746 (Pa. 1983); Fabian v. Lindsay, 765 S.E.2d 132, 140 (S.C. 2014); Stangland v. Brock, 747 P.2d 464, 467-68 (Wash. 1987). Because this cause of action requires that one of the primary purposes for the establishment of the attorney-client relationship is to benefit the nonclient,[3] the scope of such claims is necessarily limited; as this Court has previously stated, "it will no doubt be difficult for a litigant, in a case of this kind, to meet the requirements of third-party beneficiary claims." Copenhaver, 238 Va. at 371, 384 S.E.2d at 598. Indeed, it has proved so difficult that this Court has not seen another such case in the nearly three decades from Copenhaver until this day.

2. Allegations of Third-Party Beneficiary Status

The only element in dispute regarding standing is the RSPCA's status as a third-party beneficiary. A nonparty must allege facts sufficient to conclude it was a "clearly and definitely intended beneficiary" of the contract; "[a]n incidental beneficiary has no standing to sue." Kelly Health Care, Inc., v. Prudential Ins. Co., 226 Va. 376, 380, 309 S.E.2d 305, 307 (1983) (citing Valley Landscape Co. v. Rolland, 218 Va. 257, 260, 237 S.E.2d 120, 122 (1977)). We will accordingly limit the scope of our discussion to this element of the claim. An incidental beneficiary is so far removed from the obligations assumed by the contracting parties that a court will not allow him to sue on that contract, whereas an intended beneficiary is such an integral part of the obligations assumed by the contracting parties that a court will permit him to sue on

---

[3] Cf. Restatement (Third) of the Law Governing Lawyers, § 51 (2000) (describing the circumstances giving rise to a duty of care when professional negligence lies in tort, yet analogous to the reasoning underlying a duty to third-party nonclient beneficiaries when professional negligence sounds in tort but arises from a contractual agreement).

that contract.  Radosevic v. Virginia Intermont College, 651 F.Supp. 1037, 1038 (W.D. Va. 1987).

In the complaint, the RSPCA alleges that, "In engaging Mr. Thorsen's legal services . . . Ms. Dumville informed Mr. Thorsen . . . in the event that her mother predeceased her . . . to designate the RSPCA as the sole beneficiary of all of her property."  The RSPCA alleges that "Mr. Thorsen was informed that Ms. Dumville sought to bestow a benefit on the RSPCA by leaving all of her property to this one recipient in the event her mother predeceased her"; that, "[w]hen agreeing to prepare [the will,]" and "as part of his Contract," Thorsen specifically agreed to draft the will as instructed by Dumville for the sole benefit of the RSCPA in the event that her mother predeceased her; that it was clear to both Dumville and Thorsen that the RSPCA was "an intended beneficiary of the Contract;" and that Dumville was "assured by Mr. Thorsen that he had written the Will to meet her testamentary intent to leave all of her property to the RSPCA in the event that her mother predeceased her" before she executed the will.

Here, the facts sufficiently allege that the contract was entered into for the benefit of Dumville's mother and the RSPCA.  The RSPCA sufficiently alleges that Dumville "sought to confer a benefit" to the RSPCA upon her death; that she sought Thorsen's professional expertise to accomplish this task; that Dumville and Thorsen contracted so that Dumville would confer a benefit, and that Thorsen accepted that obligation, thus creating the clear and definite intent to create a benefit to the RSPCA.  When, according to the allegations, Thorsen accepted the contract to prepare Dumville's will as she specified, the RSPCA became not only the intended beneficiary of Dumville's will but also the intended beneficiary of her contract of employment with Thorsen.  Copenhaver, 238 Va. at 368-69, 384 S.E.2d at 596-97.  In sum, despite the

13

practical difficulties in being able to prove such a case, the RSPCA alleges many of the elements set forth in the successful <u>Copenhaver</u> hypothetical.

Accordingly, while we have suggested in the past that such a cause of action could exist under properly pled facts, today we affirmatively acknowledge the RSPCA's pleading as sufficient to allege a cause of action for breach of contract-professional negligence on behalf of a third-party beneficiary of the contract between the testator and her attorney. The RSPCA has standing to proceed.

C. <u>Contingent, Residuary Beneficiaries as Third Party Beneficiaries</u>

Thorsen next argues that a contingent, residuary beneficiary to a will cannot be a "clearly and definitely intended" third-party beneficiary as a matter of law. We disagree.

Thorsen seeks to remove factual matters properly within the province of the trial court, thus creating a per se rule against certain classes of testamentary beneficiaries. The class of beneficiary in a will is one of many factors to be considered in weighing whether the nonparty was a "clearly and definitely intended beneficiary" to the contract.

1. <u>Residuary Beneficiaries</u>

First, we consider the residuary beneficiary, the beneficiary who takes after specific bequests. It is patently obvious that this beneficiary can be a "clearly and definitely intended beneficiary" under the law.

Consider the following example: a widowed and remarried woman living in a nursing home with her husband retains an attorney to create a will for the benefit of her own biological son. She leaves a specific bequest to her husband of her wedding ring and bequeaths the entire residue of her estate to her son. Although the residuary taker, the son receives nearly the entirety

14

of the estate, and, although there may have been multiple purposes to the will, the son was a "clearly and definitely intended beneficiary" of the contract and not an incidental beneficiary.

Depending on circumstances, a residuary beneficiary may take all of the estate, none of the estate, or anything in between. Evidence may support a finding that the residuary beneficiary was clearly and definitely intended by the testator, or may support the conclusion that the residuary was an incidental beneficiary, such as if the testator instructed the attorney to select a charity for the residuary estate. Whether the residuary beneficiary is a third-party beneficiary is a fact-intensive inquiry; the residuary beneficiary is not precluded from third-party beneficiary status as a matter of law. See Teasdale v. Allen, 520 A.2d 295, 296 (D.C. 1987) (declining "to adopt any per se rule that standing may be granted only to those whose precise status as intended beneficiaries can be discerned from the four corners of the will itself"); Needham v. Hamilton, 459 A.2d 1060, 1061 (D.C.1983) (upholding standing in a testamentary malpractice action in which the legatee was the residuary beneficiary); Guy v. Liederbach, 459 A.2d 744, 746-47 (Pa. 1983) (finding that a named residuary beneficiary was an intended beneficiary). See also Lucas v. Hamm, 364 P.2d 685, 687 (Cal. 1961) (plaintiffs were would be takers of residual trust); Passell v. Watts, 794 So.2d 651, 652 (Fl. Dist. Ct. App. 2001) (plaintiffs were contingent, residual beneficiaries); Leak-Gilbert v. Fahle, 55 P.3d 1054, 1055-56 (Okla. 2002) (plaintiffs who were unintentionally omitted residual beneficiaries could bring a claim).

2. Contingent Beneficiaries

At the time a will is drafted, the testator cannot know or at least could not be certain whether any particular contingency will be removed such that a contingent beneficiary will in fact take. Thorsen argues, therefore, that a contingent beneficiary by definition cannot be a "definitely intended beneficiary."

15

Yet one of the most common scenarios in which parents enter into their first set of testamentary instruments shows this to be contrary to reason. Consider the couple who retains an attorney to draft reciprocal wills at the birth of their child. They will likely name each other as the primary beneficiaries, desiring that if something were to happen to only one of them, the other would benefit from the will. The child is a contingent beneficiary, sometimes through a trust if a minor and in his or her own name as an adult. An overriding purpose in entering into the contract with the attorney to draft such a will at this time is generally to account for the possibility that both parents might perish, perhaps in a common accident, and to provide for the child's long-term care. Although the surviving spouse remains the primary beneficiary of the will, and the child takes only as a contingent beneficiary, this does not alter the fact that the child is a "clearly and definitely intended beneficiary" of the contract to draft the will.

Contrary to Thorsen's claims, the viability of a third-party contract claim in this context does not depend on identifying, or being able to identify, the specific party being benefitted when the contract is made. Palmetto Fire Ins. Co. v. Conn, 272 U.S. 295, 304-05 (1926); see also 13 Williston on Contracts § 37:29, at 215 (Richard A. Lord ed., 4th ed. 1990 & 2013 rev.) (citing many sources). Contingent beneficiaries exist to accommodate changing circumstance, particularly age, and to direct the progression of beneficiaries without the constant need to revisit the instrument as time and eventuality goes by. Thus, the fact that beneficiaries do not take first does not mean that they are not "clearly and definitely intended beneficiar[ies]" under the contract, but rather that they were not intended as the first takers given the circumstances at the time the will was drafted; yet, the will might still have been drafted, perhaps even primarily as in the example above, for their benefit. See, e.g., Ogle v. Fuiten, 466 N.E.2d 224, 226 (Ill. 1984) (allowing a claim from niece and nephew contingent beneficiaries to go forward on a breach of

16

contract/third-party beneficiary theory); Passell v. Watts, 794 So.2d 651, 652 (Fl. Dist. Ct. App. 2001) (plaintiffs were contingent, residuary beneficiaries). Whether a contingent beneficiary in a will is a third-party beneficiary of the contract to draft the will is a fact-intensive inquiry.

3. Contingent, Residuary Beneficiaries

As there is no justification for barring contingent or residuary beneficiaries as a matter of law from being considered third-party beneficiaries to the attorney-client contract, neither can there be justification for barring contingent, residuary beneficiaries as a matter of law. See Passell, 794 So.2d 651, 652. Determining whether such parties satisfy the requirements for an actionable claim is an inquiry properly left to the finder of fact.

D. Plea in Bar

The denial of a plea in bar as to the statute of limitations is a question of law that this Court reviews do novo. Van Dam v. Gay, 280 Va. 457, 460, 699 S.E.2d 480, 281 (2010).

In Virginia, actions for legal malpractice are actions for breach of contract and are thus governed by the limitations periods prescribed for contract claims. Oleyar, 217 Va. at 90, 225 S.E.2d at 399. Code § 8.01-246 states that "actions founded upon a contract . . . shall be brought within the following number of years next after the cause of action shall have accrued: . . . 4. In actions upon any unwritten contract, express or implied, within three years." (Emphasis added.)

Code § 8.01-230 states that:

> In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered, except where the relief sought is solely equitable or where otherwise provided under Code § 8.01-233, subsection C of § 8.01-245, §§ 8.01-249, 8.01-250 or other statute.

(Emphases added.)

Thorsen maintains that, if he breached the contract, it was when he drafted the will, thus completing his legal services, on April 16, 2003 (citing MacLellan v. Throckmorton, 235 Va. 341, 345, 367 S.E.2d 720, 722 (1988) ("[T]he breach of contract or duty occurs and the statute of limitations begins to run when the attorney's services rendered in connection with that particular undertaking or transaction have terminated.")).  In his view, the statute of limitations then expired three years later, on April 16, 2006.  We disagree.

Statutes of limitation do not affect a cause of action; they bar a right of action. The two may accrue at the same time, but will not of necessity do so.  First Va. Bank-Colonial v. Baker, 225 Va. 72, 81-82, 301 S.E.2d 8, 13-14 (1983).  A cause of action is the operative set of facts giving rise to a right of action.  Id.; Locke v. Johns-Manville Corp., 221 Va. 951, 959, 275 S.E.2d 900, 905 (1981).  "A right of action cannot arise until a cause of action exists because a right of action is a remedial right to presently enforce an existing cause of action."  Van Dam, 280 Va. at 460, 699 S.E.2d at 481 (citing Shipman v. Kruck, 267 Va. 495, 502, 593 S.E.2d 319, 322 (2004)).  "Some injury or damage, however slight, is essential to a cause of action."  Id. at 463, 699 S.E.2d at 482.

In the case of a testamentary beneficiary, no injury, however slight, can be sustained prior to the testator's death, because "[a] testator may, during his lifetime, alter his will or other testamentary papers as he pleases and whenever he chooses."  Van Dam, 280 Va. at 462, 699 S.E.2d at 482. "While [the testator] lives, no beneficiary has anything more than a bare expectancy and no person has suffered any injury or damage as a result of his tentative dispositions."  Id. (citing Schilling v. Schilling, 280 Va. 146, 149, 695 S.E.2d 181, 183 (2010)).  Because of this mutability and bare expectancy, no testamentary beneficiary has a cause of action prior to the death of the testator.

18

In accordance with Code § 8.01-246, the three-year statute of limitations cannot begin to run as to the testamentary beneficiary until a cause of action accrues, after the death of the testator. Thus Code § 8.01-246 can, under the proper circumstances in which no injury is sustained, provide one of the referenced statutory exceptions to the rule set forth in Code § 8.01-230 that contractual rights of action accrue at breach.[4]

Most courts have allowed both the promisee and the third-party beneficiary to sue to enforce the contract. 13 Williston on Contracts § 37:55, at 354 (Richard A. Lord ed., 4th ed. 1990 & 2013 rev.). While both parties have an action against the promisor, there can only be one satisfaction, preventing double recovery. Id. at 355. This is particularly true of testamentary actions.

We do not today overrule our previous holding in MacLellan, 235 Va. at 345, 367 S.E.2d at 722 (holding that the statute of limitations began to run on a divorce attorney's services when that particular undertaking or transaction had terminated). There, MacLellan received erroneous advice on his Property Settlement Agreement, which was entered by the court as part of his divorce decree, but suffered monetarily from that harm only years later when his income changed. However, while some injury or damage, however slight, is required for a cause of action to accrue, "it is immaterial that all the damages resulting from the injury do not occur at the time of the injury." Van Dam, 280 Va. at 463, 699 S.E.2d at 482 (emphasis added). Although the plaintiff in Van Dam similarly suffered primary monetary damage at the time of her ex-husband's death due to lost survivor benefits, the Court found some initial injury took place at the time the divorce decree was entered. In each instance, the statute of limitations on

---

[4] We note that the primary purpose of Code § 8.01-230 as to contracts is to avoid creating a so-called "discovery rule," and this reading of the two statutes together in no way frustrates that purpose. The requirement of the cause of action is merely that one sustains injury, not that it be known.

19

plaintiff's right of action ran from the entry of the divorce decree, when the parties' rights were fixed.

The RSPCA's position in this case can be distinguished. It was unable to bring suit in the years following the execution of the will: lacking a vested interest and possessing only a bare expectancy, it had no standing to sue. Not even slight harm or damage accrued to the RSPCA until the testator's death.

American jurisdictions vary considerably in their approaches to statutes of limitations, some permitting the discovery rule to apply to contracts which Virginia's Code § 8.01-230 would prohibit. Nonetheless:

> Courts which have addressed this issue seem to agree that the cause of action accrues as [sic] the testator's death, not at the time of the drafting of, or signing of, the will. This is the time when the attorney's negligence becomes irremediable and the impact of the injury occurs, courts recognize; before a testator's death, the potential beneficiaries possess no recognized legal interest in the estate.

Joan Teshima, Annotation, <u>Attorney's Liability, To One Other Than Immediate Client, For Negligence in Connection with Legal Duties</u>, 61 A.L.R. 4th 615, § 5 (1988 & 2015 rev.) (citing <u>Heyer v. Flaig</u>, 449 P.2d 161 (Cal. 1969), <u>Shideler v. Dwyer</u>, 417 N.E.2d 281 (Ind. 1981); <u>Auric v. Continental Casualty Co.</u>, 331 N.W.2d 325 (Wis. 1983)).

Because the RSPCA's cause of action could not have accrued until the testator's death, we must affirm the trial court's denial of the plea in bar premised on the statute of limitations.

E. Sufficiency of the Evidence

Thorsen additionally challenges the sufficiency of the evidence to render a verdict in favor of the RSPCA at trial. Thorsen stipulated at trial that, as Dumville's attorney and pursuant to their agreement, he "had a duty to incorporate Ms. Dumville's intent into her Will in an accurate manner," that the will he drafted "did not incorporate [her] intentions regarding the

20

disposition of her property," that he is "ultimately responsible for the error in [the will]," and "as a result of this error, the RSPCA did not receive all of [her] property." Accordingly, the only element that Thorsen challenges the sufficiency of is whether the RSPCA was an intended third-party beneficiary of the contract, such that Thorsen's duty ran not only to Dumville but also to the RSPCA.

On appeal, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the prevailing party at trial. Nationwide Mut. Ins. Co. v. St. John, 259 Va. 71, 76, 524 S.E.2d 649, 651 (2000); Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 57, 419 S.E.2d 627, 630 (1992). "A judgment should be reversed for insufficient evidence only if it is plainly wrong or without evidence to support it." Edmonds v. Edmonds, 290 Va. 10, 18, 772 S.E.2d 898, 903 (2015) (internal quotation marks omitted). To review the circuit court's finding that the RSPCA was a third-party beneficiary of the contract, we review both the evidence as to Dumville's intent and Thorsen's intent at the time of the contract to consider whether the RSPCA was a "clearly and definitely intended" beneficiary.

1.  Dumville's Intent

First, we consider the question of whether the facts were sufficient for a factfinder to conclude that, for Dumville, an overriding purpose of the contract was to benefit the RSPCA. Thorsen's answer to an interrogatory from the prior collateral proceeding stated: "The decedent was clear in her instructions to Thorsen . . . that she wanted her entire estate to go to her mother and if her mother predeceased her, then her entire estate be to the Richmond SPCA. These were her instructions and intentions at the time of the initial interview and the creation of her last will and testament and throughout the drafting period." The RSPCA introduced a letter from Thorsen to the title insurance company stating:

21

[I]t was the clear intent of Alice and the intent in my drafting, to make a full and complete conveyance of Alice's estate to her mother if she survived Alice, and if not, a full and complete bequeath/conveyance of all of Alice's entire estate to the RSPCA. Moreover, I had no idea Alice had any relative other than her mother, and did not become aware of Ms. Boyles [sic] until sometime after [Dumville's mother] died.

The parties stipulated that Dumville was forty-three and her mother was in her late seventies or early eighties when the will was drafted. Thorsen testified that he was aware that Dumville had a relationship with the RSPCA, had an affinity for the organization, and wanted her cats to go to the RSPCA after her death. Thorsen testified in the previous matter that these three cats "were her babies" and she "probably cared for her cats more than she did herself." Finally, although there is error in the drafting, the RSPCA is named specifically in the will instrument.

Thorsen testified in the current proceeding that Dumville's motivation for creating a will was in part to disinherit her husband while divorce proceedings were underway. However, in the prior 2009 proceeding, he stated that "it would not have been a consideration," and he "did not discuss with [Dumville] any issue of her husband's rights of intestacy."

The circuit court found Thorsen's answers in the 2009 proceeding credible. The factfinder is entitled to consider the nature and content of the instrument as evidence and draw reasonable inferences arising therefrom. Here, a single woman with an uncomplicated estate created a simple will devising her entire estate to the only relative with whom evidence suggests she had a close relationship, her elderly mother, or, if her mother predeceased her, a charity with which she had a preexisting relationship, upon her death. It is a fair inference that the client entered into a contract to draft a will for the purpose of benefiting one of those parties upon her death. Given the deference afforded to the factfinder, we find no error in the circuit court's conclusion that the primary or overriding purpose of the contract was for the benefit of the will beneficiaries.

The evidence was also sufficient to support Dumville's intent for the RSPCA specifically to benefit. There was testimony as to her relationship with the RSPCA, supporting the RSPCA as a purposeful choice. The ages of Dumville and her mother at the time the will was drafted make it not unlikely and, in fact, foreseeable that Dumville's mother would predecease her and the RSPCA would take the entirety of Dumville's estate. Finally, in the case of a residuary charitable beneficiary, affirmatively being named in the instrument lends additional support to the testator's clear and definite intention to benefit the charity in her contract with her attorney and his understanding of that obligation.[5] Taking these facts together, we find no error in the trial court's finding of sufficient evidence to conclude that Dumville clearly and definitely intended the RSPCA to be a third-party beneficiary of the contract.

2. Thorsen's Intent

Thorsen alleges that there was no evidence that Thorsen agreed to benefit the RSPCA in entering into the retention agreement to draft the will, and so the RSPCA cannot be a third-party beneficiary of the contract. A third-party beneficiary rule "has no application unless the party sought to be held liable has assumed an obligation for the benefit of the third party." Valley Landscape Co., 218 Va. at 259-60, 237 S.E.2d at 122. Thorsen argues that, in the Copenhaver hypothetical, this Court explicitly included a requirement that a lawyer comply with the testator's specific directives at the outset of their retention. 238 Va. at 369, 384 S.E.2d at 597. Thorsen desires the Court to distinguish between the obligation undertaken to make a will in a retention agreement and the obligation to benefit the parties in the will.

_____

[5] Here, it is equally important to note what we do not decide today: while naming may in some cases support intention, failure to name does not necessarily indicate lack of intention, such as in the case of an intentional bequest to the substantially defined but open class of "my children," a term invoked in many wills to include after-born children.

23

We disagree that Copenhaver requires some specific language in the contract between a testator and her attorney that the lawyer must comply with her directives or there will be no contract, and we do not find this cause of action necessarily so limited. The Copenhaver hypothetical indeed emphasizes that mutual understanding of the benefit to the third party is essential to the contract. Id. at 369, 384 S.E.2d at 597 (e.g., "unless the lawyer agrees . . . the client will take his legal business elsewhere"; "if the lawyer agrees to comply with these specific directives"). Yet, the agreement to comply with specific directives is implied when the client contracts with the attorney to perform a specific service which the attorney then undertakes to perform. We cannot separate the obligations of the client's intent from the agreement because, without the intent and the assent to take on those specific directives, there would be no retention agreement.

For this reason, when a client can terminate a contract at any time, a client's request six months into an attorney-client relationship to make a third party his or her beneficiary has the same weight as a request on the first day of the relationship: refusal of the attorney to draft the will according to his or her wishes would likewise result in the termination of the attorney-client relationship. Thus, we do not find it necessary to prove that this mutual assent was expressed prior to retention, but rather that, prior to the completion of the attorney's services, the attorney became aware of the directives of the client and agreed to undertake the obligation.

There may be many reasons for drafting a testamentary instrument which would not result in the creation of third-party beneficiaries to the attorney-client contract. But the evidence in this case supports the trial court's finding that Dumville went to Thorsen to draft a will for the purpose of benefiting her mother and the RSPCA. The parties stipulated that, at the end of their initial meeting regarding preparation of the will, "Thorsen understood that Ms. Dumville wanted

24

him to prepare a Will which would accurately incorporate and effectuate Ms. Dumville's decisions as to the distribution of her estate upon her death, i.e. that upon her death all of her property would be left to her mother if her mother survived her, and in the event her mother predeceased her, all of her property would be left to the RSPCA." Thorsen stated under oath that "There was no doubt in my mind what she wanted in terms of the will, no doubt what she expressed." In that meeting, which Thorsen testified was their only meeting regarding the will prior to his drafting, Thorsen agreed to draft a will according to those specifications. We find no error below.

Thus, taking these findings together as a whole, we find no error in the trial court's holding that the RSPCA was a clearly and definitely identified third-party beneficiary of the contract.

### III. CONCLUSION

For the aforementioned reasons, we will affirm the judgment of the circuit court.

<u>Affirmed.</u>

JUSTICE McCLANAHAN, dissenting.

Because the rule of strict privity in legal malpractice actions has not been abolished in Virginia, I would hold that the Richmond Society for the Prevention of Cruelty to Animals ("RSPCA") does not have standing to sue for breach of the legal services agreement between Alice Louise Cralle Dumville and James B. Thorsen. The determination of whether to abolish the common law privity requirement is a policy decision that should be made by the General Assembly, not this Court. Therefore, I dissent.

"Virginia has adopted the strict privity doctrine in legal malpractice cases." <u>Johnson v. Hart</u>, 279 Va. 617, 624, 692 S.E.2d 239, 243 (2010). In fact, "the common law has long

25

provided that [a legal malpractice action] requires the existence of an attorney-client relationship as a threshold requirement." Id. at 626, 692 S.E.2d at 244. The requirement of privity is grounded in the "'highly confidential and fiduciary relationship between an attorney and client'" and "'safeguards the attorney-client relationship which is an indispensable component of our adversarial system of justice.'" Id. at 625, 692 S.E.2d at 243 (quoting MNC Credit Corp. v. Sickels, 255 Va. 314, 318-19, 497 S.E.2d 331, 333-34 (1998)). We have held that this policy underlying the requirement of privity "precludes a testamentary beneficiary from maintaining, in her own name, a legal malpractice action against an attorney with whom an attorney-client relationship never existed." Id. at 625, 692 S.E.2d at 244.[1]

"By statute in Virginia, it is provided that: 'Every attorney at law shall be liable to his client for any damage sustained by him by the neglect of his duty as such attorney.'" Glenn v. Haynes, 192 Va. 574, 580, 66 S.E.2d 509, 512 (1951) (emphasis added) (quoting former Code § 54-46, predecessor to Code § 54.1-3906); see Code § 54.1-3906 ("Every attorney shall be liable to his client for any damage sustained by the client through the neglect of his duty as such attorney." (emphasis added); Ripper v. Bain, 253 Va. 197, 202, 482 S.E.2d 832, 835 (1997) ("An attorney is liable to the client for damages caused by the attorney's negligence.") (citing Code § 54.1-3906). The General Assembly has dispensed with the requirement of privity to allow actions resulting from legal malpractice concerning an irrevocable trust where a legal services contract existed between the grantor of the trust and the attorney prior to the grantor's death. See

---

[1] The majority concludes that the "holding" in Johnson is "inapplicable" because the testamentary beneficiary pursued her claim as a beneficial owner under Code § 8.01-13 and "never argued that she was an intended third-party beneficiary." Yet, the majority's conclusion ignores the ratio decidendi for the Court's holding in Johnson – the common law requirement of the existence of an attorney-client relationship to maintain a legal malpractice action and the underlying policy of such requirement, which also precludes assignment of legal malpractice claims.

26

Code § 64.2-520(B) (permitting action for damages to the grantor, the estate, or the trust, by the grantor's personal representative or the trustee if such damages are incurred after the grantor's death).[2] The General Assembly has not abolished the common law requirement of privity for any other legal malpractice actions.

Contrary to the majority's suggestion, this Court did not abandon the requirement of privity in legal malpractice actions in Copenhaver v. Rogers, 238 Va. 361, 384 S.E.2d 593 (1989). Although, in that case, the Court discussed cases from other jurisdictions that have permitted third-party beneficiary claims against attorneys and ultimately ruled that the claim of the beneficiaries in Copenhaver did not meet traditional rules governing third-party beneficiary claims, the Court did not address the issue of whether the common law requirement of privity in legal malpractice actions has been, or should be, abandoned in Virginia to accommodate third-party beneficiary claims against attorneys. This issue is squarely before the Court in this case and demands a careful and thorough discussion of the policies underlying the requirement of strict privity and the role this Court should play in determining whether this common law requirement should be abolished.[3]

---

[2] The statute provides that "[a]n action for damages, including future tax liability, to the grantor, his estate or his trust, resulting from legal malpractice concerning an irrevocable trust shall accrue upon completion of the representation in which the malpractice occurred." Code § 64.2-520(B) (emphasis added). "An action for damages pursuant to this section in which a written contract for legal services existed between the grantor and the defendant shall be brought within five years after the cause of action accrues" and "[a]n action for damages pursuant to this section in which an unwritten contract for legal services existed between the grantor and the defendant shall be brought within three years after the cause of action accrues." Id.

[3] Despite the majority's implication otherwise, the Court in Ward v. Ernst & Young, 246 Va. 317, 435 S.E.2d 628 (1993), made no comparison between accountants and attorneys in its analysis of the third-party beneficiary claim in that case. In fact, the Court did not discuss the privity requirement in legal malpractice actions or even cite to Copenhaver in the context of its discussion of that claim.

27

The abolishment of the common law requirement of privity in legal malpractice actions presents competing public policy concerns. While acknowledging the need to have attorney accountability in the area of estate planning, many state courts have refused to abandon the privity requirement in actions for legal malpractice in this context. See, e.g., Robinson v. Benton, 842 So.2d 631, 637 (Ala. 2002) ("[W]e decline to change the rule of law in this state that bars an action for legal malpractice against a lawyer by a plaintiff for whom the lawyer has not undertaken a duty."); Baker v. Wood, Ris & Hames, PC, 364 P.3d 872, 882 (Colo. 2016) (extending third-party beneficiary theory of contract liability to legal malpractice claims by intended beneficiaries of a will "is contrary to each of the settled policies underlying the strict privity rule to which Colorado courts have long adhered, and we perceive no justifiable policy reason for so extending attorney liability"); Noble v. Bruce, 709 A.2d 1264, 1275 (Md. Ct. App. 1998) ("We decline the beneficiaries' invitation to create a new rule in Maryland governing attorney liability to nonclients arising out of will drafting or estate planning."); Schneider v. Finmann, 933 N.E.2d 718, 721 (N.Y. 2010) ("[S]trict privity remains a bar against beneficiaries' and other third-party individuals' estate planning malpractice claims absent fraud or other circumstances."); Shoemaker v. Gindlesberger, 887 N.E.2d 1167, 1172 (Ohio 2008) ("While recognizing that public-policy reasons exist on both sides of the issue, we conclude that the bright-line rule of privity remains beneficial. The rule provides for certainty in estate planning and preserves an attorney's loyalty to the client."); Barcelo v. Elliott, 923 S.W.2d 575, 579 (Tex. 1996) ("We therefore hold that an attorney retained by a testator or settlor to draft a will or trust owes no professional duty of care to persons named as beneficiaries under the will or trust.").

Chief among the policy reasons underlying the rule of privity is the preservation of the sanctity of the attorney-client relationship. "Primarily, the [privity] rule is used to protect the

attorney's duty of loyalty and the attorney's effective advocacy for the client." Shoemaker, 887 N.E.2d at 1171. "The strict privity rule ensures that attorneys may represent their clients without the threat of suit from third parties who may compromise that representation. Otherwise, an attorney's preoccupation or concern with potential negligence claims by third parties might diminish the quality of legal services provided to the client if the attorney were to weigh the client's interests against the possibility of third-party lawsuits." Id.; see also Baker, 364 P.3d at 877 ("[L]imiting an attorney's liability to his or her clients protects the attorney's duty of loyalty to and effective advocacy for the client."); Barcelo, 923 S.W.2d at 578-79 (preserving a bright-line privity rule "will ensure that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation").[4]

The privity rule also serves to protect against the potential for conflicting duties owed to clients and third parties by the attorney. "[E]xpanding attorney liability to non-clients could result in adversarial relationships between an attorney and third parties and thus give rise to conflicting duties on the part of the attorney." Baker, 364 P.3d at 877. "Such conflicting duties and loyalties, in turn, could constrain the attorney's ability to represent his or her client

---

[4] Discussing the scenario in which an attorney may have delayed in ensuring a will was properly executed, the Supreme Court of Texas observed:

> In most cases where a defect renders a will or trust invalid, however, there are concomitant questions as to the true intentions of the testator. Suppose, for example, that a properly drafted will is simply not executed at the time of the testator's death. The document may express the testator's true intentions, lacking signatures solely because of the attorney's negligent delay. On the other hand, the testator may have postponed execution because of second thoughts regarding the distribution scheme. In the latter situation, the attorney's representation of the testator will likely be affected if he or she knows that the existence of an unexecuted will may create malpractice liability if the testator unexpectedly dies.

The Court stated, "we are unable to craft a bright-line rule that allows a lawsuit to proceed where alleged malpractice causes a will or trust to fail in a manner that casts no real doubt on the testator's intentions, while prohibiting actions in other situations." Barcelo, 923 S.W.2d at 578.

29

properly." Id. Thus, "without the strict privity rule, the attorney could have conflicting duties and divided loyalties during the estate planning process." Shoemaker, 887 N.E.2d at 1171.

The abandonment of privity in legal malpractice actions also raises justifiable concerns over uncertain and unlimited liability as well as the effect on the availability of legal services. As the Supreme Court of Texas noted, "if an attorney's duty of care were extended to third parties, then the attorney could be liable to an unforeseeable and unlimited number of people." Baker, 364 P.3d at 878. "The impact of an expansion of attorney liability to third parties would not be limited to the attorneys. As other courts have recognized, an expansion of attorney liability to allow claims by non-clients could deter attorneys from undertaking certain legal matters, thus compromising the interests of potential clients by making it more difficult for them to obtain legal services." Id.; see also Schneider, 933 N.E.2d at 721 ("Relaxing privity to permit third parties to commence professional negligence actions against estate planning attorneys would produce undesirable results--uncertainty and limitless liability."); Shoemaker, 887 N.E.2d at 1171 (observing that without the privity requirement "there would be unlimited potential liability for the lawyer").

In the context of estate planning services, the abandonment of the privity doctrine is particularly troublesome since, under the majority's holding that the cause of action for legal malpractice accrues on the date of the client's death, an attorney may be held liable for malpractice decades after the testamentary documents were drafted for the client.[5] In general, when the alleged legal malpractice consists of a single, isolated act, the statute of limitations

---

[5] In contrast, in the one instance in which the General Assembly has dispensed with the requirement of privity to permit a legal malpractice action by a nonclient, the General Assembly has provided that the action "shall accrue upon completion of the representation in which the malpractice occurred." Code § 64.2-520(B) (emphasis added) (permitting action for damages to the grantor, the estate, or the trust, by the grantor's personal representative or the trustee if such damages are incurred after the grantor's death).

begins to run when the act is performed. Keller v. Denny, 232 Va. 512, 518, 352 S.E.2d 327, 330 (1987); see Code § 8.01-230. When a course of professional services takes place over a period of time, the statute of limitations begins to run when the attorney's services related to that particular undertaking ended. Id. Yet, as this Court has observed, "[a] testator may, during his lifetime, alter his will or other testamentary papers as he pleases and whenever he chooses." Van Dam v. Gay, 280 Va. 457, 462, 699 S.E.2d 480, 482 (2010). Thus, while the testator lives, "no beneficiary has anything more than a bare expectancy and no person has suffered any injury or damage as a result of his tentative dispositions." Id. Following this logic, the majority concludes that since third-party beneficiaries of a legal services agreement to draft a will suffer no damage until the testator's death, the statute of limitations does not begin to run until testator's death. Thus, attorneys in Virginia will now be subject to liability to nonclients for malpractice in connection with the preparation of testamentary documents for an indefinite, and potentially lengthy, period of time after the preparation of such documents.

In my view, the decision of whether to abolish the privity requirement in legal malpractice actions and create a new cause of action against attorneys in favor of third-party beneficiaries should be left to the legislature. Although the public's interest in holding attorneys accountable in providing estate planning services is an important consideration, there are competing policy concerns raised by the extension of legal malpractice standing to nonclients. "The public policy of the Commonwealth is determined by the General Assembly [because] it is the responsibility of the legislature, and not the judiciary, . . . to strike the appropriate balance between competing interests." Uniwest Constr., Inc. v. Amtech Elevator Servs., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010) (internal quotation marks and citation omitted). When the

question of whether to recognize a new cause of action involves a multitude of competing interests,

> which courts are ill-equipped to balance, . . . . [o]n the other hand, the legislative machinery is specially geared to the task. A legislative change in the law is initiated by introduction of a bill which serves as public notice to all concerned. The legislature serves as a forum for witnesses representing interests directly affected by the decision. The issue is tried and tested in the crucible of public debate. The decision reached by the chosen representatives of the people reflects the will of the body politic. And when the decision is likely to disrupt the historic balance of competing values, its effective date can be postponed to give the public time to make necessary adjustments.

Bruce Farms, Inc. v. Coupe, 219 Va. 287, 293, 247 S.E.2d 400, 404 (1978).

The majority's decision to recognize this new cause of action represents a radical departure from the existing law of legal malpractice in Virginia. Under the majority opinion, the common law requirement of privity in legal malpractice actions is now abolished in Virginia. From this date forward, attorneys will owe a legal duty to nonclients by virtue of legal services agreements with their clients whenever a "lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient."[6] In the specific context of estate planning in which the cause of action will accrue upon the client's death, attorneys will be subject to liability for malpractice for a period of time that could extend well beyond the date that the testamentary documents were drafted. Such uncertain and unlimited liability will undoubtedly deter attorneys from offering estate planning services. Additionally, this expansion of liability will likely lead to higher malpractice insurance premiums and ultimately affect the ability of potential clients to obtain affordable estate planning

---

[6] Although today's opinion is rendered in the context of an action resulting from services provided in connection with a will, the majority's discussion, as well as its citation to the Restatement (Third) of the Law Governing Lawyers, § 51 (2000), signals the Court's intention to abolish the requirement of privity in all legal malpractice actions.

services from attorneys who choose to continue to offer such services.  The common law requirement of privity in legal malpractice actions may "produce inequities," but "it is the role of the General Assembly, not the courts, to change a rule of law that has been relied upon by the bench and bar for many years."  Van Dam, 280 Va. at 462, 699 S.E.2d at 483.

For the foregoing reasons, I would hold that the RSPCA lacked standing to sue Thorsen for legal malpractice and would, therefore, reverse the judgment of the circuit court overruling the demurrer.