# Richmond.

## Building, Light and Water Co. v. Fray.

### January 12, 1899.

| 96 | 559 |
|106 | 163 |

| 96 | 559 |
|110 | 425 |

1. COVENANT OF SEISIN, OR RIGHT TO CONVEY—*Inchoate Dower.*—A covenant for seisin, or of the right to convey, which in most cases is its equivalent, is not broken by an outstanding inchoate right of dower. It does not affect the technical seisin of the grantee.

2. DEEDS—*Husband and Wife—Recordation—Dower.*—An unrecorded deed from husband and wife conveying his land does not convey the wife's contingent right of dower in the land. The deed must be admitted to record as to the husband as well as the wife in order to accomplish this result. Code, sec. 2502.

3. DEEDS—*Reconveyance to Secure Purchase Price—Dower of Vendee's Wife.*—If land be conveyed to a husband who, as a part of the same transaction, reconveys it to a trustee to secure only two thirds of the purchase money, although none of the purchase money is paid, and he subsequently resells the land to his grantor for the amount agreed to be paid by him, and conveys the same to his grantor by a deed from himself and wife, which is lost before being admitted to record, his widow has no claim on the land, whatever may be her claim on the one third of the purchase price for which no lien was reserved.

4. COVENANT OF SEISIN—*Breach—Damages.*—The covenant of seisin is broken, if at all, as soon as it is made, but the damages to be recovered therefor are not necessarily the consideration paid, but are to be measured by the actual loss sustained, and if, before any injury is sustained, the covenantor perfects his title by inurement, the recovery for the breach of the covenant will be limited to nominal damages only.

5. COVENANTS—*Seisin—Further Assurances—Supplying Evidence of Title—Damages.*—A grantor who has covenanted that he has the right to convey, and that he will give further assurances of title, may, before his grantee has suffered any damage, or been disturbed in his possession, and before suit for breach of his covenants, set up and supply a missing link in the chain of his title whereby his grantee is assured of his title and possession.

6. CHANCERY JURISDICTION—*Lost Deeds—Effect of Decree Setting up Deed—Evidence.*—Courts of equity have jurisdiction to set up lost deeds, and when so set up in a suit in which the court has jurisdiction of the parties and the subject-matter, the decree and the deed made in pursuance thereof are proper evidence of the passing of the title by the lost deed, and they cannot be assailed in any collateral proceeding. The decree alone is sufficient without the introduction of other parts of the record.

7. LOST DEED—*Husband and Wife—Decree Setting up Deed—Dower.*—A decree of a court of chancery setting up an unrecorded deed of husband and wife, which has been lost, does not operate to debar the wife, on the death of her husband, from claiming dower in the land, if she was otherwise entitled to it. The execution and delivery by her of the lost deed did not convey her interest. Admission to record was necessary to accomplish that.

Error to a judgment of the Corporation Court of the city of Buena Vista rendered July 17, 1897, in an action of *covenant* wherein the defendants in error were the plaintiffs, and the plaintiff in error was the defendant.

Reversed.

The opinion states the case.

*Winbourne & Batchelor*, for the plaintiff in error.

*H. A. White* and *E. M. Pendleton*, for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Corporation Court of the city of Buena Vista in an action by the defendants in error against the plaintiff in error to recover damages for the alleged breach of covenants in a deed conveying to defendants in error a certain vacant lot in the city of Buena Vista.

The language in the covenants in the deed alleged to have been broken is " that it (B. L. & W. Co., grantor) has the right to convey the said land to the grantee; that it has done no act to encumber the said land ; that the grantee shall have

quiet possession of the land free from all encumbrances; and that the said party of the first part will execute such further assurances of the said land as may be requisite."

The uncontroverted facts are that by deed dated October 23, 1890, recorded Nov. 17, 1890, the B. L. & W. Co., in consideration of $1,000 cash, and of two bonds for $1,000 each, payable at six and twelve months, conveyed to R. H. Aylor a certain lot (No. 4, block 48, section 2, fronting on Forest avenue, in the city of Buena Vista). The deed acknowledged the receipt of the cash payment, but in fact it was never paid. By deed dated the same day, recorded November 23, 1890, Aylor conveyed the lot to J. W. Childs, in trust, to secure his two bonds for the deferred payments. Shortly after this, and before January 28, 1891, Aylor being unable to make the cash payment, the B. L. & W. Co. agreed to take the lot back, and release Aylor from the payment of the purchase money, and did release him from the cash payment, and surrendered to him his bonds for the deferred payments, in consideration that he would reconvey the lot to the B. L. & W. Co.

Aylor was in the employ of the B. L. & W. Co. and, as its agent, was engaged in the sale of lots in Buena Vista. As such agent, on January 28, 1891, he sold to the defendants in error the lot mentioned, and the B. L. & W. Co. conveyed it to them, the deed being in Aylor's handwriting. The terms of this sale were the same as that to Aylor of October 23, 1890. The defendants in error paid the cash payment of $1,000, and executed their bonds for $1,000 each, to the B. L. & W. Co., and secured the bonds by trust deed on the lot, which bonds they afterwards settled with the B. L. & W. Co. by compromise. In the latter part of 1895, or early in 1896, the defendants in error learned of the prior deed to Aylor, who in the meantime had died; and thereupon J. L. Fray (one of the defendants in error) called on J. W. Childs, in Lynchburg, the representative of the B. L. & W. Co., to know "what he was going to do about it," to which Childs replied: "We will

have Aylor's minor children make the deed," or that, " if anything is wrong, we will have it corrected." (To this Childs claims that Fray said ."all right," but Fray says, " I neither consented or objected to what Childs proposed to do.")

It was claimed by the B. L. & W. Co. that, at the time Aylor was released· from the payment of the purchase money for the lot, he and his wife executed and delivered to the company a deed reconveying the lot to it, which deed was lost before it was admitted to record, and very soon after the interview between J. L. Fray and J. W. Childs the B. L. & W. Co. instituted, in the Corporation Court of the city of Buena Vista, a chancery suit against Aylor's widow and heirs for the purpose of setting up the alleged lost deed, and a decree was entered in that suit establishing the deed, and directing a commissioner of the court, appointed for the purpose, to make a deed for the lot to the B. L. & W. Co., or to any one the company might direct. Accordingly this commissioner made a deed, in which the B. L. & W. Co. united, conveying the lot to the defendants in error, and the deed was sent to them about May 15, 1896, and they retained it, without objection to its sufficiency or otherwise, until April 1, 1897, when they returned it to the B. L. & W. Co. for the alleged reason that the company had broken its " covenants of warranty."

This suit was thereupon brought, and matured to the second April rules in 1897.

The declaration alleges the breach of other covenants, but the defendants in error (plaintiffs below) rely only upon the covenants of " right to convey " and that " it (grantor) has done no act to encumber said land," &c.

The plaintiff in error (defendant below) pleaded covenants performed, and covenants not broken, and filed a statement of the grounds of its defence, in which it claimed that, prior to the date of the conveyance to the plaintiffs, Aylor and wife, in consideration of the release of Aylor from the payment of the purchase money for the lot and the surrender of his bonds, re-

conveyed the lot to the defendant company by a proper deed, which was lost, and that this deed had been established and set up by the decree of a court of competent jurisdiction, &c. Issue was joined on the pleas, and the verdict and judgment was for the plaintiffs for $1,000, with interest thereon from January 28, 1891.

The plaintiff in error waives its demurrer to the declaration, and its first and second bills of exceptions to the rulings of the court below at the trial, relying here · upon its third, fourth, and fifth exceptions. The third is to the giving, over the objection of the defendant, eight of the nine instructions asked for by the plaintiffs; the fourth to the refusal to give certain instructions, and the modification of others asked for by the defendant; and the fifth is. to the action of the court in over-ruling the motion of the defendant to set aside the verdict and grant it a new trial upon the grounds that the verdict is contrary to the law and the evidence.

We do not deem it necessary to consider *seriatim* the instructions given for the plaintiffs over the objection of the defendant, nor those asked for by the defendant and refused or modified.

It is the contention of the defendants in error, that the covenant of the right to convey, which in most cases (as in this) is the equivalent of a covenant of seisin (Devlin on Deeds, 893; Sedgwick on Dam., 966) in the deed to defendants in error of January 28, 1891, was broken as soon as made by reason of the inchoate right of dower in the lot conveyed, out-standing in Mrs. Aylor, and because no deed had ever been gotten from Aylor reconveying the lot back to the plaintiff in error prior to the deed of January 28, 1891, and therefore the plaintiffs were entitled to recover in this action the purchase money paid by them, with interest from date of. its payment; in other words, that if a defective title is shown to exist in the grantor at the time of the conveyance, the covenantees may, as a matter of right, rescind the purchase, and recover their purchase money with interest.

This position is wholly untenable. In the first place, the covenant for seisin, or of the right to convey, is not broken by an outstanding inchoate right of dower. It does not affect the technical seisin of the grantee. He has the title by virtue of his deed, and although the right of dower in the land may be an encumbrance from which he may be protected by his covenant against encumbrances, yet it does not affect his possession of the land, or his legal title thereto. Devlin on Deeds, sec. 890, and cases cited in notes.

It is true, as the jury were instructed by plaintiff's instruction No. 4, that although a deed of conveyance of the lot back to the B. L. & W. Co. had been executed by Aylor and wife, and delivered to the B. L. & W. Co., yet, if the deed was not recorded, it did not operate to pass Mrs. Aylor's contingent right of dower in the lot, if such she had—the recordation of the deed being necessary to operate as a conveyance of whatever "right, title, and interest" Mrs. Aylor had in the lot conveyed. Code of Va. 2502. But in no view that may be taken of this case can it be said that Mrs. Aylor had a contingent right of dower, or other interest, in the lot conveyed to defendants in error by the deed of January 28, 1891.

By the uncontradicted evidence, Aylor never paid any part of the purchase money for the lot, and a deed of trust was given by him to secure two thirds of it, and certainly the encumbrance held by the B. L. & W. Co. upon the lot was paramount to any interest Mrs. Aylor had therein, and there is no suggestion even that the sale back to the company to satisfy the encumbrance upon the lot for the purchase money was not *bona fide*, and for its full value.

Even though the cash payment of $1,000 for the lot, from which Aylor was released, was not a lien "paramount to the wife," her dower right in this was subject to the payment, first, of the $2,000 secured by trust deed, and when the lot was sold to pay the $2,000, and it had brought more than this sum, the $1,000 could only have been considered a surplus arising from

the sale in which the wife might have had in interest. But this would give her no claim on the land in the hands of the B. L. & W. Co., or its grantee.    Code of Va. 2269; *Coffman* v. *Coffman*, 79 Va. 504; *Cowardin* v. *Anderson*, 78 Va. 88; *Hurst* v. *Dulaney*, 87 Va. 444.

We need not enter into a discussion of the authorities cited by counsel for defendants in error to sustain their contention that the measure of damages for a breach of a covenant for seisin, or of right to convey, is the purchase money paid with interest, &c., and that title acquired subsequent to the breach is no defence.    Among them is the case of *Conrad* v. *Effinger*, 87 Va. 59, where there had been an eviction, and, in this case as in the other authorities cited, the questions discussed were whether or not the covenantor was restricted in his recovery to the purchase money paid and interest, and not allowed to recover for improvements, and other kindred questions. These authorities have no application to the case before us. There are numerous authorities agreeing that the measure of damages for a breach of the covenant for seisin, where the conveyance passes nothing, is the consideration paid by the covenantor and interest thereon; but, where he acquires anything by his deed, this must be considered in measuring damages.    Devlin on Deeds, secs. 894 and 899.

In authorities cited in note to last named section, it is held that the weight of American authority has determined that the covenant of seisin is broken, if broken at all, so soon as it is made, and thereby the immediate right of action accrues to him who has received it.    But in such case the grantee is not entitled, as a matter of course, to recover back the consideration money.    The damages to be recovered are measured by the actual loss at the time sustained.    If the purchaser has bought in the adverse right, the measure of his damage is the sum paid.    If he has been deprived of the whole subject of his bargain, or of a part of it, they are measured by the whole consideration in the one case, a corresponding part in the other.

Among the authorities here cited is the case of *Tanner* v. *Livingston*, 12 Wend. (N. Y.) 83, where the deed of conveyance purported to convey a fee-simple estate, when it turned out that grantor had but a life estate in the property, and it was held that the grantee must hold the life estate, and recover only, for the breach of his covenant for seisin, the difference between the value of the life estate acquired by his deed and the fee-simple bargained for.   See also Devlin on Deeds, sec. 900, where it is said that if the covenant is for a fee-simple, and the estate is subject to a life estate, recovery may be had for the value of the less estate.   If, after the covenants are broken, and before the covenantee commences action, the paramount title is acquired by the covenantor, which by the operation of other covenants is transferred to the covenantee, the damages may be mitigated or reduced to a nominal amount by this fact. That is to say, that for the breach of the covenant of good right to convey, nominal damages are only recoverable where, before actual injury sustained, the title is perfected by inurement.   See also note to *Mecklem* v. *Blake*, 99 Amer. Dec. 76; 3 Sedgwick on Dam., sec. 978.

Plaintiffs' instruction No. 3 is as follows: "The court further instructs the jury that if they believe from the evidence that the defendant, in January, 1891, conveyed Lot No. 4, Block No. 48, Section No. 2, in Buena Vista, to the plaintiffs, and covenanted that it had a right to convey said lot to the plaintiffs; and that at the time the defendant did not have a good title to said lot, or did not have good right, full power, and absolute authority to convey said lot to the plaintiffs, in the manner in which it was conveyed, then the jury must find for the plaintiffs, even though the jury further believe that the defendant has since acquired good title to said lot and offered to convey it to the plaintiffs, which offer plaintiffs have refused; and, in such cases, the measure of damages of the plaintiffs is the purchase price paid by them to the defendant for said lot, with interest thereon from the date of payment."

There was no evidence tending to show an after acquired title, and if there had been, still the instruction, in the absence of all proof of injury sustained by the plaintiff, or of an adverse possession of the lot before the title was perfected, is erroneous, in that it told the jury that the measure of plaintiffs' damages was the purchase price paid with interest. Maupin on Mark. Title, pp. 271, 508, 509; Sedgwick on Damages, 351; Baxter v. Bradbury, 20 Me. 260.

The decree of the Corporation Court establishing and setting up the evidence of the original title in the B. L. & W. Co. when it conveyed to the plaintiffs, was competent evidence on the point for which it, and the deed made by the commissioner of the court to the plaintiffs pursuant to the decree, were offered in evidence; and, as contended by counsel for plaintiff in error, the natural effect of this instruction was to mislead the jury, by confounding in their minds after acquired title and a subsequent decree and conveyance which sets up the evidence of original title, and cause them to mistake the latter for the former.

The question in this case is not whether a grantor can force upon his grantee an after acquired title to land to which he had no title when he conveyed it to the grantee, but it is whether or not a .grantor, before his grantee has been disturbed in his possession or suffered damage because of his defective title, and before action brought, can set up and supply a missing link in the chain of title whereby the grantee is assured of his title and possession. We fully agree with the court in its decision in the case of Baxter v. Bradbury, supra, where it said: " The covenant of seisin was intended to secure to the plaintiff a legal seisin in the land conveyed. If it is broken, and he fails of that seizin, he has the right to reclaim the purchase money   But if, by virtue of another covenant in the same deed (for further assurances of title) which was also taken to assure to him the subject-matter of the conveyance, he has obtained that seisin, it would be altogether in-

equitable that he should have the seisin, and be allowed besides to recover back the consideration paid for it."

This brings us to the question that is raised by instruction No. 9 given for the plaintiffs, and the refusal to give defendant's instructions Nos. 7 and 9. Plaintiffs' instruction No. 9 is as follows:

"The court further instructs the jury that the deed from O. D. Batchelor, commissioner, &c., to the plaintiffs, and the decree in the cause of the *Building, Light and Water Company* v. *Aylor's Heirs*, are not evidence of the existence of any title in the defendant at the time of the deed of January 28, 1891, to plaintiffs."

### No. 7.

Defendant's instructions Nos. 7 and 9 refused, are: "The court instructs the jury that the decree of May 14, 1896, in the chancery cause of *Building, Light and Water Company* against *R. H. Aylor's Widow and Heirs*, is conclusive evidence in this action against any claim of dower interest in or title to the lot in question by the widow and heirs at law of R. H. Aylor, and that the deed of O. D. Batchelor, special commissioner, dated May 15, 1896, made in pursuance of said decree, is a complete estoppel against the widow and heirs of said Aylor, and is sufficient to vest in the plaintiffs the title which it purports to convey."

### No. 9.

"The court instructs the jury that the decree of May 14, 1896, in the chancery cause of *Building, Light and Water Company* v. *R. H. Aylor's Widow and Heirs*, is competent and admissible evidence in this action to show a passing of title to the lot in question from R. H. Aylor to defendant; and the deed of O. D. Batchelor, special commissioner, dated May 15, 1896, made in conformity to said decree, operates to set up the lost deed established by said decree, and must so stand and be accepted as long as the said decree remains in force."

It is true, as the court instructs the jury by plaintiffs' instruction No. 8, that in order to prove the existence of a lost deed, the loss of it, due execution and delivery, and all the facts necessary to constitute a good and lawful deed must be proven by clear and direct testimony, &c., but that is not the question presented by instruction No. 9 given by the court for the plaintiffs over the objection of the defendant, and the refusal of instructions 7 and 9 asked for by the defendant.

That courts of equity have jurisdiction to set up lost deeds and wills, and establish titles under them, can certainly not be denied.   *Thomas* v. *Ribble*, 24 S. E. 241.

The effect of plaintiffs' instruction No. 9 is to annul and wholly avoid, in a collateral action, the decree of a court of record, entered in a cause of which it had jurisdiction both as to the parties and subject-matter.   The decree recites "that between the dates of October 23, 1890, and January 28, 1891, by deed duly executed and delivered by R. H. Aylor and wife to the plaintiff, the B. L. & W. Co., Aylor and wife conveyed the same lot that was conveyed to Aylor by the deed of the first named date, which deed had been lost or destroyed, as fully appears from the record and depositions in this suit." This decree means nothing, and serves no purpose whatever, if it is not evidence of the passing of title by the deed which it delares was lost.   The defendant was required, as set out in plaintiffs' instruction No. 2, to prove that, at the time it made the covenant in the deed of January 28, 1891, to plaintiffs of good right to convey, it had an indefeasible title to the property conveyed, and the defendant, to establish a missing link in the chain of its title, offered the decree of a court of competent jurisdiction, and the deed made in pursuance thereof, which establish and set up the lost deed constituting this missing link, and yet the jury are told, in effect, by plaintiffs' instruction No. 9, and the refusal to give defendant's instructions Nos. 7 and 9, to disregard this decree and deed as evidence of

plaintiffs' title on January 28, 1891, when it conveyed the lot in question to the plaintiffs.

"A judgment at law or decree in equity, when it constitutes a link in a chain of title, is competent and admissible evidence in that character and for that purpose, not only against the parties to the record, but against all the world." Black on Judg., sec. 607 and cases cited, among which is the case of *Baylor* v. *Dejarnette*, 13 Gratt. 152. In that case, which was an action of ejectment, a decree in a chancery suit was offered in evidence in support of title, and objections were urged against it, but the court said: "All these are matters purely of equitable cognizance with which the court of law has no concern. To undertake to reverse the proceedings would be to usurp the province of the court of chancery, and to do what even that court would not do in this collateral way. For that court would not, without proper proceedings to present the subject directly, disregard this decree, or reject it as evidence. So long as it remains unreversed, it must have the force and effect of an adjudication upon the entire estate, and must be considered to divest the title out of the defendant and those claiming in remainder after him. Although it is a decree in chancery, and not a judgment at law, yet our courts of chancery being courts of record, their decrees may be the basis of title in a court of law the same as a judgment of recovery in a real action. And the deed of the marshal, made in conformity to its decree, operates to transfer the entire title in fee-simple to the purchaser, and must so stand and be accepted as long as the decree on which it rests remains in force. If there be errors to the prejudice of the remainderman for which the decree is liable to be reversed, he may, it would seem, make himself a party to the original suit by filing a supplemental bill to have the benefit of the proceedings for the purpose of appealing."

The decree alone is sufficient without the introduction of other parts of the record. *White* v. *Clay's Ex'ors*, 7 Leigh

68; *Winn* v. *Harman,* 5 Gratt. 157 ; *Masters* v. *Varner's Ex'ors,*
Ibid. 171; *Pugh* v. *McCue,* 86 Va. 477.   It was said in the last
named case, with reference to a deed of a commissioner in a
chancery suit, introduced as evidence of a link in a chain of
title, without any part of the record : " If those recitals are
inconsistent with the record, the plaintiff could have shown it
by the introduction of the record.   It is clear, therefore, that
the deed was not only admissible in evidence, but that, in this
collateral action, it must be regarded as an unassailable con-
veyance of the legal title."

We are of opinion that the court below should not have
given plaintiffs' instruction No. 9, but should have given in-
struction No. 9 asked for by the defendant.

While the decree referred to in defendant's instruction No.
7 is competent evidence in this cause to prove that R. H.
Aylor, by deed in which his wife united, had reconveyed the
lot in question to the B. L. & W. Co. prior to the latter's con-
veyance of the lot to defendants in error of January 28, 1891,
and conclusive evidence of any claim of title to the lot in the
heirs at law of Aylor, and the deed made by O. D. Batchelor,
special commissioner, to defendants in error, pursuant to the
decree, a complete estoppel against these heirs, and sufficient
to divest them of any right to or interest in the lot, it is not
under the circumstances of this case evidence against the
widow.   The object of the suit was to set up a deed that had
not been recorded, and therefore did not bar the right of
dower.   That suit could only restore what had been lost;
it created no new rights and was not intended to do so, and
left the widow where it found her.   If her husband during
coverture had been so seised of this land as to entitle her to
dower in it, that right was not defeated by the unrecorded
deed which was lost, nor by the deed of Commissioner Batche-
lor, the only office and effect of which was to set up the lost
deed and furnish evidence of the rights of parties as estab-
lished by it.   Therefore, this instruction was properly refused.

Defendant's instruction No. 11 asked for told the jury that the decree of the court setting up the lost deed from Aylor and wife conveying the lot to the B. L. & W. Co. was competent and admissible evidence in this action on the question of the passing of title to the lot in question from Aylor to the defendant, but the court struck out the words " the passing of title," and inserted in lieu thereof the words " the effort then made to pass title." This, for the reasons already stated, was error.

As the case has to go back because of the errors already pointed out, other questions presented in the record and elaborately argued need not be considered.

The judgment of the court below will be reversed and annulled, the verdict of the jury set aside, and the cause remanded for a new trial to be had in accordance with the views expressed in this opinion.

*Reversed.*