PRESENT: All the Justices

DENNIS W. KERNS

v. Record No. 171068

WELLS FARGO BANK, N.A.

OPINION BY
JUSTICE D. ARTHUR KELSEY
SEPTEMBER 27, 2018

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

In the circuit court, Dennis W. Kerns claimed that Wells Fargo Bank, N.A. ("Wells Fargo") had breached a mortgage loan agreement by failing to give him a contractually required opportunity to cure his default and by improperly accelerating the balance due after his default — leading ultimately to a foreclosure sale of the property. Ruling on Wells Fargo's plea in bar, the circuit court concluded that the debt acceleration had triggered the accrual of Kerns's breach of contract claims. Because that breach had occurred more than five years before Kerns filed suit, the court dismissed the suit pursuant to the applicable statute of limitations. Finding no error in the court's ruling, we affirm.

I.

In 2009, Kerns borrowed money from a mortgage lender to purchase property. The loan was accompanied by a promissory note and a deed of trust. Paragraph 7(C) of the note provided:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

J.A. at 14.[1]

---

[1] The deed of trust contained a similar provision. *See* J.A. at 25. Kerns contends that a breach of this provision in the deed of trust implicates the limitation period in Code § 8.01-241.

The lender assigned the note to Wells Fargo.[2]  At some point within the following year,

Kerns fell behind in his mortgage payments.  Wells Fargo sent him, by certified U.S. mail, a pre-

acceleration notice advising him that he was

> in default for failure to make payments due.  Unless the payments
> on your loan can be brought current by July 20, 2010, it will
> become necessary to require immediate payment in full (also
> called acceleration) of your Mortgage Note and pursue the
> remedies provided for in your Mortgage or Deed of Trust, which
> include foreclosure.

*Id.* at 39.  The notice, which was dated June 20, 2010, explained the consequences if Kerns failed

to bring the account current:

> If funds are not received by the above referenced date, we will
> proceed with acceleration.  Once acceleration has occurred, we
> may take steps to terminate your ownership in the property by a
> foreclosure proceeding, which could result in Lender or another
> person acquiring ownership of the property. . . .
>
> You have the right to reinstate your Mortgage Note and Mortgage
> or Deed of Trust after acceleration, and to have enforcement of the
> Mortgage discontinued and to have the Mortgage Note and
> Mortgage remain fully effective as if acceleration had never been
> required.  However, any future negotiations attempting to reinstate
> your loan or any payment of less than the full amount due shall not
> require Wells Fargo Bank, N.A.'s waiver of the acceleration unless
> otherwise agreed to, in writing, by Wells Fargo Bank, N.A.

*Id.*  Kerns received the pre-acceleration notice but does not claim that he made any further

payments on the debt.

---

Kerns concedes, however, that he "did not raise that issue in this case."  Appellant's Br. at 3 n.2.
We thus do not address whether Code § 8.01-241 has any relevance here.

[2] The United States Department of Veterans Affairs (the "VA") guaranteed the loan "and
made payment to Wells Fargo in connection with that backing."  J.A. at 6.  The VA participated
in related federal litigation involving Kerns and Wells Fargo but was not made a party to the
present case.  *See Kerns v. United States*, No. 3:12-cv-490, 2012 U.S. Dist. LEXIS 165851, at
*4, *13-14 (E.D. Va. Nov. 20, 2012) (unpublished) (dismissing Kerns's breach of contract
claims because he failed to file suit according to the contract's terms of notice and cure).

Treating the entire loan balance as due, Wells Fargo instructed the trustee to foreclose on the property. The trustee advertised for and later conducted the foreclosure sale on August 23, 2011. As Kerns concedes,[3] these events necessarily imply that Wells Fargo accelerated the entire debt prior to the date of foreclosure. When Kerns did not leave the property following the foreclosure, Wells Fargo filed an unlawful detainer action against him. The general district court ruled in favor of Wells Fargo and ordered Kerns to vacate the property. On de novo appeal, the circuit court ordered the same.

Exactly five years after the foreclosure sale, on August 23, 2016, Kerns filed the present suit, a breach of contract action against Wells Fargo. Kerns alleged that Wells Fargo had breached the promissory note and deed of trust by issuing the pre-acceleration notice dated June 20, 2010. That notice, Kerns claimed, had been "back-dated to June 20, 2010" but actually had been mailed on June 21. *Id.* at 3. Kerns based that claim on a United States Postal Service "Track & Confirm" report showing "Electronic Shipping Info Received" on June 21, 2010. *Id.* at 41. Using June 21, rather than June 20, as the date that the notice had been mailed, Kerns claimed that Wells Fargo had issued "a 29-day notice rather than a 30-day notice." *Id.* at 3. Wells Fargo had thus "breached" the terms of the loan agreement and deed of trust. *Id.* at 5.

Wells Fargo defended the suit on several grounds, including that (i) the five-year statute of limitations, Code § 8.01-246(2), barred the breach of contract claims; (ii) Kerns had failed to plead causation because he did not allege that he could have cured his default if Wells Fargo had given him a 30-day notice instead of a 29-day notice;[4] and (iii) the United States Postal Service

---

[3] *See* Appellant's Br. at 6 (stating that the "acceleration occurred prior to the foreclosure" (citing J.A. at 232-33)).

[4] *See generally Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 323 (2015) (holding that, in the context of a breach of contract claim challenging a foreclosure, "an essential element in a breach of contract action is that the defendant's breach of a contractual obligation caused injury

"Track & Confirm" report did not identify the actual date that Wells Fargo had deposited the letter in a mailbox. Ruling on Wells Fargo's plea in bar, the circuit court held that the five-year statute of limitations barred the breach of contract claims. The court's final order did not address Wells Fargo's remaining defenses.[5]

## II.

On appeal, Kerns argues that the circuit court erred when it dismissed the breach of contract claims on statute-of-limitations grounds and ruled that the five-year limitation period began to run earlier than the date of the foreclosure sale. In response, Wells Fargo contends that the court correctly held that the breach of contract claims accrued at the earlier time of the wrongful acceleration of the debt caused by the allegedly defective, pre-acceleration notice.[6]

## A.

Absent a genuine issue of material fact, a circuit court's "denial of a plea in bar as to the statute of limitations is a question of law that this Court reviews de novo." *Thorsen v. Richmond SPCA*, 292 Va. 257, 277 (2016) (citing *Van Dam v. Gay*, 280 Va. 457, 460 (2010)). Because there are no facts in dispute, we decide this appeal entirely on governing principles of law.

---

or damage to the plaintiff").

[5] An earlier order of the court granted Wells Fargo's demurrer to the breach of contract claims on the ground that "such a breach was not a material breach of the contract because the foreclosure did not occur for another thirteen months, after the filing of bankruptcy and the continued residency of [Kerns] in the property for many months thereafter." J.A. at 87. The court's final order, however, declared that its statute-of-limitations holding rendered the earlier demurrer "moot" and "amended" its prior order "to the extent necessary to comply" with the order then issued. *Id.* at 179-80.

[6] Wells Fargo maintains that, even if not barred by the statute of limitations, the breach of contract claims still fail as a matter of law because Kerns did not allege causation. *See* Appellee's Br. at 23. Because we agree that the circuit court properly calculated the statute of limitations, we do not reach this argument.

The limitation period in a pure statute of limitations, unlike that in a statute of repose, *see, e.g.*, *Commonwealth v. Owens-Corning Fiberglas Corp.*, 238 Va. 595, 598-99 (1989), begins to run on the date of accrual.[7] That date depends upon two different things: the type of claim asserted and the nature of the accrual. Code § 8.01-230 provides:

> In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered, except where the relief sought is solely equitable or where otherwise provided under § 8.01-233, subsection C of § 8.01-245, §§ 8.01-249, 8.01-250 or other statute.

Under this statute, a right of action on a tort claim involving personal injury or property damage accrues on "the date the injury is sustained." Code § 8.01-230. In contrast, a right of action on a breach of contract claim generally accrues "when the breach of contract occurs" and "not when the resulting damage is discovered." *Id.*

A different statute specifies the length of the limitation period. The statute governing written contracts provides that a civil action "founded upon a contract . . . shall be brought within the following number of years next after the *cause of action* shall have accrued: . . . (2) In actions on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby, or by his agent, within five years whether such writing be under seal or not." Code § 8.01-246 (emphasis added).

Both Code § 8.01-230 and Code § 8.01-246(2) address the concept of accrual but apply it to different topics. Code § 8.01-230 defines the "accrual" of a "right of action." The "prescribed

---

[7] *See Friends of Clark Mt. Found., Inc. v. Board of Supervisors*, 242 Va. 16, 19-20 (1991) (differentiating between the three types of statutes limiting the time to file suit); *Hess v. Snyder Hunt Corp.*, 240 Va. 49, 52 (1990) (explaining the difference between statutes of limitations and statutes of repose).

limitation period . . . begin[s] to run" on the date of the "breach" and not on the date when the "resulting damage is discovered."  Code § 8.01-230.  Code § 8.01-246(2) prescribes a five-year limitation period running from the day of the "accrual" of a "cause of action" that is "founded" on a written contract.

B.

We have explained on several occasions the distinction between a right of action and a cause of action:

> A "*right of action*" is a legally recognized "remedial right" to "enforce a *cause of action*," which is simply the "set of operative facts" that causes a claimant to assert his claim.  *Id.* (emphases added); *see also* Black's Law Dictionary 266, 1520 (10th ed. 2014) (defining "cause of action" as a "group of operative facts giving rise to one or more bases for suing" and "right of action" as the "right to bring a specific case to court").  The distinction between a *right* of action and a *cause* of action should not be dismissed as an odd, rhetorical anachronism.  It factors into many modern legal doctrines, including res judicata, accrual for statute-of-limitations purposes, and, pertinent here, a party's right to seek judicial remedies.

*Cherrie v. Virginia Health Servs.*, 292 Va. 309, 314 (2016) (emphases in original); *see also* *Graham v. Community Mgmt. Corp.*, 294 Va. 222, 227 n.2 (2017).  "[A]nd while '[t]he two may accrue at the same time,' they 'will not of necessity do so.'"  *Graham*, 294 Va. at 227-28 (second alteration in original) (citation omitted).

Until today, we have not directly faced the specific problem implicated by this case.  The two statutes relevant to Kerns's claims appear to initiate the limitation period on different dates: Code § 8.01-230 commences the running of the limitation period, i.e., starts the clock, when the "right of action" accrues, and Code § 8.01-246(2) starts the clock when the "cause of action" accrues.  Code § 8.01-230, however, provides for exceptions "where the relief sought is solely equitable or where otherwise provided under § 8.01-233, subsection C of § 8.01-245, §§ 8.01-

6

249, 8.01-250 or other statute." If we were to treat Code § 8.01-246 as an unspecified "other statute" exempt from Code § 8.01-230, then the exception would swallow the rule with respect to nearly all breach of contract claims.

In Virginia, "[w]e 'presume that the legislature chose, with care, the words it used when it enacted the relevant statute.' 'The act of choosing carefully some words necessarily implies others are omitted with equal care.'" *In re Brown*, 295 Va. 202, 223 (2018) (citations omitted). Kerns cannot rebut that presumption here. The General Assembly enacted the first version of Code § 8.01-246 in 1964. *See* 1964 Acts ch. 219, at 411. From then until now, that statute began the limitation period when the cause of action accrued. The General Assembly enacted the first version of Code § 8.01-230 in 1977. *See* 1977 Acts ch. 617, at 1086. From then until 1996, that statute also began the limitation period when the cause of action accrued. In 1996, however, the General Assembly deleted "cause of action" and substituted in its place "right of action." 1996 Acts ch. 328, at 581; *see Graham*, 294 Va. at 227.

As has been often said, "we assume that the General Assembly's amendments to a statute are purposeful, rather than unnecessary." *West Lewinsville Heights Citizens Ass'n v. Board of Supervisors*, 270 Va. 259, 265 (2005) (citing *AAA Disposal Servs. v. Eckert*, 267 Va. 442, 446 (2004); *Virginia-Am. Water Co. v. Prince William Cty. Serv. Auth.*, 246 Va. 509, 517 (1993); *Cape Henry Towers, Inc. v. National Gypsum Co.*, 229 Va. 596, 600 (1985)). And "when current and prior versions of a statute are at issue, there is a presumption that the General Assembly, in amending a statute, intended to effect a substantive change in the law." *Id.* (citing *Virginia-Am. Water Co.*, 246 Va. at 517; *Dale v. City of Newport News*, 243 Va. 48, 51 (1992)). We thus cannot dismiss this textual difference as the product of an inadvertent drafting mistake.

7

C.

As a general rule, "[a] right of action cannot accrue until there is a cause of action," *Caudill v. Wise Rambler, Inc.*, 210 Va. 11, 13 (1969), and "[s]ome injury or damage, however slight, is essential to a cause of action, but it is immaterial that all the damages resulting from the injury do not occur at the time of the injury," *Van Dam*, 280 Va. at 463. We have repeated these concepts in many cases involving property damage or personal injury claims, among others.[8] In these scenarios the accrual trigger is typically the same for the cause of action and the right of action. The duty-breach-harm sequence for a tort claim, when complete, triggers the accrual of a cause of action as well as a right of action upon the date of damage or injury. In such cases, the use of "right of action" in Code § 8.01-230 instead of "cause of action" for the accrual date will usually be a distinction without a difference because the accrual date typically remains the same.

---

[8] *See Graham*, 294 Va. at 228 (breach of contract); *Moonlight Enters., LLC v. Mroz*, 293 Va. 224, 230 (2017) (legal malpractice); *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 123-24 (2017) (property damage); *Hensel Phelps Constr. Co. v. Thompson Masonry Contractor, Inc.*, 292 Va. 695, 706 (2016) (breach of contract); *Thorsen*, 292 Va. at 278 (legal malpractice); *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 22-23 (2013) (personal injury); *Shipman v. Kruck*, 267 Va. 495, 502-04 (2004) (legal malpractice); *St. George v. Pariser*, 253 Va. 329, 332 (1997) (personal injury); *Lo v. Burke*, 249 Va. 311, 317 (1995) (wrongful death); *McHenry v. Adams*, 248 Va. 238, 243 (1994) (personal injury); *Starnes v. Cayouette*, 244 Va. 202, 206-07 (1992) (personal injury), *superseded in part on other grounds by constitutional amendment*, Va. Const. art. IV, § 14; *Scarpa v. Melzig*, 237 Va. 509, 512 (1989) (personal injury), *overruled on other grounds by Nunnally v. Artis*, 254 Va. 247, 252 (1997); *Stone v. Ethan Allen, Inc.*, 232 Va. 365, 369 (1986) (property damage); *Locke v. Johns-Manville Corp.*, 221 Va. 951, 960 (1981) (personal injury); *Farley v. Goode*, 219 Va. 969, 975 (1979) (personal injury); *Richmond Redev. & Hous. Auth. v. Laburnum Constr. Corp.*, 195 Va. 827, 839 (1954) (property damage); *Street v. Consumers Mining Corp.*, 185 Va. 561, 566 (1946) (wrongful death); *Louisville & Nashville R.R. v. Saltzer*, 151 Va. 165, 171 (1928) (property damage); *Southern Ry. v. Leake*, 140 Va. 438, 441 (1924) (property damage); *Southern Ry. v. Watts*, 134 Va. 503, 511 (1922) (property damage). *But see Chalifoux v. Radiology Assocs. of Richmond, Inc.*, 281 Va. 690, 696-97 (2011) (acknowledging that in Virginia "the statute of limitations begins to run when the plaintiff is injured, not when the plaintiff discovers the injury," but noting that "[t]he continuing treatment rule operates as an exception").

In this case, however, Kerns asserts breach of contract claims. As noted earlier, Code § 8.01-230 treats such claims differently than property damage and personal injury claims. A contractual right of action accrues "when the breach of contract occurs," except in certain equity cases and where other statutes say otherwise. Code § 8.01-230. If so, then a right of action for a breach of contract could, in theory, be barred by the statute of limitations without regard to whether compensatory damages ever occur. Several of our cases briefly say as much,[9] as do a few federal cases.[10] We stand by those statements and explain why accrual for breach of contract, as Code § 8.01-230 plainly states, turns entirely on the breach and why, in the end, that accrual principle does not conflict with Code § 8.01-246(2).

We begin that explanation with the general observation, applicable to all claims, that "the running of the statute is not postponed by the fact that the *actual* or *substantial* damages do not occur until a later date." *Caudill*, 210 Va. at 14-15 (emphases added). "Actual or compensatory damages" are "synonymous" terms. *News Leader Co. v. Kocen*, 173 Va. 95, 108 (1939) (citation omitted). "Compensatory damages are often referred to as 'actual' damages to distinguish them from punitive or nominal damages," and "compensatory damages include all damages other than

[9] *See, e.g.*, *Hensel Phelps Constr. Co.*, 292 Va. at 707 (citing Code § 8.01-230 and stating that "the Commonwealth's larger statutory scheme . . . relies on accrual of a right of action upon breach rather than upon discovery on most contract actions in the interest of finality"); *Shipman*, 267 Va. at 503 ("Under Code § 8.01-230 the injury is deemed to accrue 'when the breach of contract occurs . . . not when the resulting damage is discovered.'"); *Building, Light & Water Co. v. Fray*, 96 Va. 559, 565-66 (1899) ("[T]he weight of American authority has determined that the covenant of seisin is broken, if broken at all, so soon as it is made, and thereby the immediate right of action accrues to him who has received it . . . .").

[10] *See, e.g.*, *Fluor Fed. Sols., LLC v. PAE Applied Techs., LLC*, 728 Fed. Appx. 200, 202 (4th Cir. 2018) ("The limitation period begins to run 'when the breach of contract occurs.'" (quoting Code § 8.01-230)); *Herbaugh v. Bank of Am., N.A.*, No. 5:15cv71, 2016 U.S. Dist. LEXIS 91940, at *16 (W.D. Va. July 15, 2016) (unpublished) ("The limitations period commences on the date of the alleged breach." (citing Code § 8.01-230)).

9

nominal or punitive damages." 1 Charles E. Friend & Kent Sinclair, Friend's Virginia Pleading and Practice § 23.03[1][a], at 23-10 (3d ed. 2017).

Any amount of damages, "however slight," triggers the accrual of the cause of action, and for this reason, "it is immaterial that all the damages resulting from the injury do not occur at the time of the injury." *Van Dam*, 280 Va. at 463.[11] These slight damages, moreover, need not be "ascertained with specificity" at the time of breach. *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 548-49 (1989) (rejecting the principle adopted in an Oklahoma case that "the limitation period began to run when the damages could be ascertained with specificity").

This general accrual principle becomes even more refined in the context of contractual disputes. Just because "the actual damage sustained is to some extent uncertain and cannot be calculated mathematically to a cent or a dollar, it does not follow that [the] offending party cannot be . . . called to account at all." *Eckington & Soldiers' Home Ry. v. McDevitt*, 191 U.S. 103, 111 (1903). The party responsible for the breach can be held liable for "nominal damages." *Id.* In Virginia, when "no evidence is given of any particular amount of loss, [the law] declares the right by awarding what it terms 'nominal damages.'" *News Leader Co.*, 173 Va. at 107-08 (citations omitted).

Nominal damages are "appropriate when there is a legal right to be vindicated against an invasion that has produced no actual, present loss of any kind or where, from the nature of the case, some injury has been done but the proof fails to show the amount." *Town & Country Props., Inc. v. Riggins*, 249 Va. 387, 399 (1995); *see also Crist v. Metropolitan Mortg. Fund,*

---

[11] *See, e.g.*, *Graham*, 294 Va. at 228; *Hensel Phelps Constr. Co.*, 292 Va. at 706; *Thorsen*, 292 Va. at 279.

10

*Inc.*, 231 Va. 190, 195 (1986); *Orebaugh v. Antonious*, 190 Va. 829, 834 (1950).[12]  A recovery

of nominal damages, as Professor Sinclair has explained,

> represents an award of a token or symbolic recovery amount that is
> designed to vindicate plaintiff[s'] rights by making a legal
> declaration that the plaintiff has been wronged and that the judicial
> system recognizes that the defendant has been shown culpable
> under the applicable elements of a claim and burdens of proof,
> though a measurable amount of loss either has not been established
> or is not warranted for other reasons on the facts of the case.
> Plaintiff's prevailing status is recognized and vindicated by such
> an award, even without payment of a significant amount of
> monetary damages.

Kent Sinclair, Sinclair on Virginia Remedies § 1-1, at 1-5 (5th ed. 2016); *see also* Restatement

(Second) of Contracts § 346(2) (1981); 3 E. Allan Farnsworth, Farnsworth on Contracts § 12.8,

at 189-90 (3d ed. 2004); 24 Samuel Williston, A Treatise on the Law of Contracts § 64:6, at 62-

63 (Richard A. Lord ed., 4th ed. 2002).[13]

In this case, the circuit court did not hold that the limitation period began when Wells

Fargo issued its allegedly defective, pre-acceleration notice or even when the 29-day cure period

expired that made acceleration possible.  Instead, the court narrowly held that the limitation

---

[12] Though available in contract actions, "[n]ominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred."  *Gilliam v. Immel*, 293 Va. 18, 26 n.6 (2017) (quoting William L. Prosser, The Law of Torts § 30, at 143 (4th ed. 1971)); *see also* Restatement (Second) of Torts § 907 cmt. a (1979) ("If actual damage is necessary to the cause of action, as in negligence, nominal damages are not awarded."); Dan B. Dobbs, Handbook on the Law of Remedies, § 3.9, at 208 (1973) (same); 11 Joseph M. Perillo, Corbin on Contracts § 55.10, at 35-36 (rev. ed. 2005) (same); Arthur G. Sedgwick, Elements of Damages 83 (1896) (same).

[13] Other legal doctrines, such as the doctrine of indivisible and divisible contracts, similarly mitigate against the risks that Kerns forecasts by providing the non-breaching party the opportunity to pursue a claim at several intervals within the contract relationship where damages might become manifest.  *See, e.g.*, *Jones v. Morris Plan Bank*, 168 Va. 284, 290 (1937) ("If a transaction is represented by one single and indivisible contract and the breach gives rise to one single cause of action, it cannot be split into distinct parts and separate actions maintained for each."); *id.* ("[I]f the contract is divisible, giving rise to more than one cause of action[,] each may be proceeded upon separately.").

period began when Wells Fargo *actually* accelerated the debt and made the entire outstanding balance immediately due — thereby placing Kerns in a worse position than he would have been if he had brought the account current as the pre-acceleration notice demanded.[14] From the circuit court's perspective, the unilateral act of acceleration purported to create a legally viable chose in action against Kerns that could be later enforced in foreclosure and collection proceedings. By impermissibly altering the legal relationship between the parties in this manner, the circuit court held, the alleged contractual breach by Wells Fargo caused Kerns legally cognizable harm.[15] Finding ourselves in the company of the few courts that have addressed this issue,[16] we agree.

Kerns objects to this reasoning by contending that the acceleration did not cause injury to his contractual rights because Wells Fargo had no right to accelerate, and thus, no legally

---

[14] Kerns concedes that an acceleration of the debt purporting to make the entire balance immediately due necessarily preceded the foreclosure sale of the property. *See* Appellant's Br. at 6 (citing J.A. at 232-33). He also acknowledges that "[i]f the statute of limitations began to run upon acceleration of the note, then [his] appeal must fail." *Id.* at 3.

[15] Kerns implies, but does not develop, the possibility that the foreclosure could be deemed a separate cause of action independent of the alleged breach of the term for notice of acceleration. *See id.* at 6-7. Any such implication, if intended, is belied by the allegations in his complaint that inextricably tie the foreclosure to the initial breach of contract arising out of the 29-day notice and the subsequent acceleration of the debt. *See generally* J.A. at 2-9; *Westminster Investing Corp.*, 237 Va. at 548-49 (rejecting the contention that "a new cause of action" occurred every day that the defendant breached a contract during a seven-year period).

[16] *See, e.g.*, *DeFranceschi v. Seterus, Inc.*, 731 Fed. Appx. 309, 311 (5th Cir. 2018) (stating that "the limitations period begins to run 'when the holder actually exercises its option to accelerate'" (citation omitted)); *United States v. Rogerson*, No. 5:95-CV-43-D(3), 1995 U.S. Dist. LEXIS 8296, at *11-13 (E.D.N.C. May 22, 1995) (unpublished) (collecting cases and stating that "substantial authority holds that the acceleration notice and demand is the critical date for calculating the limitation period under" a federal statute); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 565 (Tex. 2001) (recognizing that a cause of action accrues upon acceleration); 1 Bruce J. Bergman, Bergman on New York Mortgage Foreclosures § 5.11 (2018) ("Even though a mortgage may be payable in installments, once acceleration has been declared, the entire amount is due and the statute of limitations begins at that moment to run on the entire debt."). *See generally* 5 Kenneth M. Lapine et al., Banking Law § 120.08 (1997) (collecting cases and discussing when acceleration triggers accrual).

recognized acceleration could have occurred. *See* Reply Br. at 3-4; Oral Argument Audio at 2:12 to 2:26 (stating that the defective notice "doesn't actually create an acceleration because it wasn't done correctly and can't be enforced"). This argument inverts Code § 8.01-230 by suggesting that no breach of contract (if later proven to be a true breach) could ever trigger the accrual of a right of action because the transgressor had no right to breach. If that syllogism were true, a party could repudiate an agreement and no right of action would accrue to the innocent party to file suit contesting the repudiation. The common law, however, has long recognized a right of action for breach of contract against a party repudiating an agreement in violation of its terms. *See, e.g.*, *Wood v. Quillin*, 167 Va. 255, 261 (1936). *See generally* Sinclair, *supra*, § 36-4, at 36-34.

Kerns next argues that if he had filed his breach of contract claims after acceleration but before foreclosure, there would be no cause of action because he had yet to lose his property.[17] *See* Appellant's Br. at 8 & n.8. Perhaps so, but this observation is true in every case involving future, unrealized damages. For example, if a personal injury claimant files suit the day after he sustains his injury, at trial he may find himself unable to accurately project his future damages if his medical condition or his vocational status remain uncertain. But this risk has never been the basis for pushing forward the date of accrual. As we explained in *Van Dam*:

> Difficulty in ascertaining the existence of a cause of action is . . .
> irrelevant. This time-honored [accrual] rule may produce
> inequities by triggering a statute of limitations when the injury or
> damage is unknown or difficult or even incapable of discovery, but
> we have long concluded that it is the role of the General Assembly,

---

[17] Kerns also argues that lenders would be able to "avoid liability by early wrongful accelerations followed by delay until the expiration of the statute of limitations after which wrongful foreclosures could be conducted with impunity." Appellant's Br. at 11 (altering capitalization). This argument is meritless as a debtor would still have the right to file a breach of contract claim as long as he does so within five years of the alleged violation of the agreement's terms.

> not the courts, to change a rule of law that has been relied upon by the bench and bar for many years.

280 Va. at 463.

In the contractual context, premature accrual fears are more hypothetical than real. Typically, a claim alleging breach of a written contract governed by a five-year limitation period will not put a claimant in the position of having to file suit before his future, compensatory damages can be reasonably estimated. That observation is certainly true here. Kerns had five years to file his breach of contract claims after Wells Fargo had accelerated his debt. Much of that period came after foreclosure, giving Kerns ample time to calculate and prove any compensable damages that he could hope to recover.[18] If, for some reason, the foreclosure sale had taken place beyond five years from the date of accrual, Kerns still could have filed his breach of contract claims, sought nominal damages, and, if successful, established a collateral-estoppel basis for barring any future foreclosure sale that violated the contractual cure provision.[19]

## III.

In sum, the circuit court correctly held that Kerns's breach of contract claims — whether viewed as a right of action under Code § 8.01-230 or a cause of action under Code § 8.01-246 —

---

[18] In fact, Kerns did so in 2012. *See Kerns*, 2012 U.S. Dist. LEXIS 165851, at *4 (asserting breach of contract claims and arguing that, among other issues, Wells Fargo failed to file suit according to the contract's requirement for a 30-day notice of acceleration). Wells Fargo raised this point during oral argument. *See* Oral Argument Audio at 19:00 to 19:45 (observing that Kerns sued Wells Fargo in 2012 and that "the nature of the claims were known to the appellant well before the new filing of this suit in August of 2016").

[19] The availability of nominal damages in a breach of contract case does not preclude declaratory judgment relief. In this context, the latter compliments the former. For this reason, "[t]oday, under modern statutes, [a plaintiff] is more likely to bring an action for a declaratory judgment." John D. Calamari & Joseph M. Perillo, The Law of Contracts § 14-2, at 519 (2d ed. 1977).

accrued when the debt was accelerated prior to foreclosure.  Because Kerns did not file his suit within five years of this date of accrual, the statute of limitations barred his claims.

*Affirmed.*