COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, AtLee and Callins
Argued at Richmond, Virginia


INGLESIDE EMERGENCY GROUP, LLC, ET AL.
                                                    MEMORANDUM OPINION* BY
v.          Record No. 1311-23-2                    JUDGE DOMINIQUE A. CALLINS
                                                    NOVEMBER 12, 2024
MICHELE H. HOLLIS, M.D.


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard S. Wallerstein, Jr., Judge

D. Paul Holdsworth (Nigel L. Wilkinson; Jackson Lewis, P.C., on
briefs), for appellants.

Thomas E. Strelka (Strelka Employment Law, on brief), for
appellee.


After being terminated from her position as an emergency medicine physician for

appellants Ingleside Emergency Group, LLC ("IEG") and Kingsford Emergency Group, LLC

("KEG") (collectively, "Ingleside"), Dr. Michelle Hollis sued Ingleside, alleging that Ingleside

terminated her in violation of the Virginia Whistleblower Protection Act ("VWPA"), Code

§ 40.1-27.3.  Ingleside filed a plea in bar to Dr. Hollis's VWPA claim, arguing that the claim was

filed outside of the VWPA's one-year statute of limitations.  The trial court denied the plea in

bar, and this Court granted Ingleside's petition for interlocutory appeal.  For the following

reasons, we affirm the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

Dr. Hollis is an emergency medicine physician. In July 2020, Dr. Hollis's professional corporation entered into two provider agreements with IEG and KEG, respectively, to provide emergency medical services at two Virginia hospitals within the HCA Healthcare ("HCA") network. In her complaint, Dr. Hollis alleged that she was "repeatedly directed" by SCP Health ("SCP")[1] administrators in November and December 2020 "to upcharge her services as 'critical care' even when she was not provi[ding] critical care services as defined in the [medical] coding." Dr. Hollis believed this was "an effort by Defendants[2] to generate fraudulent income through overbilling of government programs such as Medicare and Medicaid." Dr. Hollis "repeatedly refused to illegally upcharge services and reported to management of Defendants in 2020 and early 2021 that she would not improperly upcharge patient care as 'critical care.'" Dr. Hollis also "complained in emails and verbally to management of Defendants that Defendants had intentionally mismanaged federal [COVID-19 relief] funds intended for Physicians" such as Dr. Hollis.

Dr. Hollis also asserted that, in November 2020, one of her patients experienced a brain bleed after Dr. Hollis "ordered an injection of recombinant tissue plasminogen activator ("TPA") for a patient at the insistence of the neurology consultant." In assessing the incident, Dr. Hollis "communicated to other medical staff that she thought that the TPA order was incorrect" and that "[t]he push to give TPA is dangerous." Dr. Hollis also sent an email to an SCP physician, Dr. Jeremiah O'Shea, reiterating that "the call for TPA was the wrong one" and that "the risk did not outweigh the benefits" in giving this "potentially dangerous medication" to the patient.

---

[1] Dr. Hollis asserted that SCP is Ingleside's corporate parent.

[2] Dr. Hollis listed IEG, KEG, SCP, and Subsidium Healthcare, LLC ("Subsidium") as the defendants in her complaint. SCP and Subsidium are not parties to this appeal.

Dr. O'Shea did not share Dr. Hollis's skepticism of TPA and responded that "complications . . . have been rare and generally not severe, even with some intracranial hemorrhage."

On March 2, 2021, Dr. Hollis "noticed that she was not scheduled to work in April," and she emailed Jason Clark, SCP's Vice President of Staffing Operations to "ask why." Clark responded that "the hospital had said that 'there is a case pending review'" and referred Dr. Hollis to another HCA employee, Dr. Ankur Fadia. Dr. Fadia "did not return [Dr.] Hollis'[s] calls, and Clark did not provide any additional information to [Dr.] Hollis." Dr. Hollis subsequently obtained legal counsel, and Dr. Hollis's attorney sent a demand letter to Clark on April 5, 2021, claiming that IEG was in breach of contract and demanding that IEG clarify the status of Dr. Hollis's contract. On June 2, 2021, Dr. Hollis "received a letter from HCA stating that her 'resignation' was 'approved'" and that "[Dr.] Hollis'[s] 'Medical Staff appointment and clinical privileges have been considered voluntarily relinquished effective'" March 3, 2021. Contrary to the letter, Dr. Hollis asserted that she "never resigned her position, terminated her Provider Agreement, nor relinquished her clinical privileges."

The following year, on April 1, 2022, Dr. Hollis filed a complaint against Ingleside alleging, inter alia,[3] that Ingleside terminated her in violation of the Virginia Whistleblower Protection Act, Code § 40.1-27.3. Dr. Hollis asserted that Ingleside "terminated [her] in retaliation for [her] refusal to upcharge her services" and "for her reports to her supervisors concerning . . . violations of federal and state law and regulations." Ingleside filed an answer and demurrer, and subsequently filed a plea in bar to the VWPA claim. In its plea in bar, Ingleside argued that Dr. Hollis's VWPA claim was barred by the VWPA's one-year statute of limitations because Dr. Hollis filed her complaint over a year after her March 2, 2021

---

[3] The complaint contained four counts: (1) breach of contract against IEG; (2) breach of contract against KEG; (3) violation of the VWPA against all four defendants; and (4) tortious interference with Dr. Hollis's IEG and KEG contracts against SCP and Subsidium.

- 3 -

recognition that she was not scheduled to work in April 2021. Ingleside asserted that if there had been any retaliatory action, March 2, 2021, would have been its start date. Ingleside also noted that Dr. Hollis, in her brief in opposition to Ingleside's initial demurrer, stated that her March 2, 2021 recognition that she had been removed from the hospital schedule "began the retaliatory adverse action."

After hearing oral argument from the parties, the trial court denied Ingleside's plea in bar. In reaching its ruling, the trial court stated that it was "not convinced that the statute of limitations ran at the time of the e-mail exchange in March [2021]." The trial court later denied Ingleside's motion for reconsideration and granted Ingleside's request to certify the court's ruling for interlocutory appeal under Code § 8.01-675.5. This Court granted Ingleside's petition for interlocutory appeal.

ANALYSIS

On appeal, Ingleside challenges the trial court's denial of Ingleside's plea in bar, arguing that the trial court erred in finding that the VWPA's statute of limitations did not start to accrue when Dr. Hollis recognized on March 2, 2021, that she was not scheduled to work in April 2021.

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Robinson v. Nordquist*, 297 Va. 503, 513 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "We apply a de novo standard of review when '[t]here are no disputed facts relevant to the plea in bar and it presents a pure question of law.'" *Smith v. McLaughlin*, 289 Va. 241, 251 (2015) (quoting *David White Crane Serv. v. Howell*, 282 Va. 323, 327 (2011)). "[A] circuit court's 'denial of a plea in bar as to the statute of limitations is a question of law that this Court reviews de novo.'" *Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 154 (2018) (quoting *Thorsen v. Richmond SPCA*, 292 Va. 257, 277 (2016)). "Where no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must

- 4 -

rely solely upon the pleadings in resolving the issue presented." *Robinson*, 297 Va. at 513-14 (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996)). "When the circuit court takes no evidence on the plea in bar, we accept the plaintiff's allegations in the complaint as true." *Plofchan v. Plofchan*, 299 Va. 534, 547-48 (2021).

Under the Virginia Whistleblower Protection Act, Code § 40.1-27.3, "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other *retaliatory action* regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee:"

> 1. Or a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official;
>
> 2. Is requested by a governmental body or law-enforcement official to participate in an investigation, hearing, or inquiry;
>
> 3. Refuses to engage in a criminal act that would subject the employee to criminal liability;
>
> 4. Refuses an employer's order to perform an action that violates any federal or state law or regulation and the employee informs the employer that the order is being refused for that reason; or
>
> 5. Provides information to or testifies before any governmental body or law-enforcement official conducting an investigation, hearing, or inquiry into any alleged violation by the employer of federal or state law or regulation.

Code § 40.1-27.3(A) (emphasis added). The VWPA imposes a one-year statute of limitations, providing that "[a] person who alleges a violation of this section may bring a civil action in a court of competent jurisdiction within one year of the employer's *prohibited retaliatory action*." Code § 40.1-27.3(C) (emphasis added). The question in this appeal is whether Dr. Hollis's March 2, 2021 recognition that she was not scheduled to work in April 2021 was sufficient to constitute a "prohibited retaliatory action" by Ingleside against Dr. Hollis, triggering the VWPA's statute of limitations. We hold that it was not.

- 5 -

In Virginia, the general rule is that "where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once." *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 22 (2013) (quoting *Street v. Consumers Mining Corp.*, 185 Va. 561, 566 (1946)). "It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date." *Id.* (quoting *Street*, 185 Va. at 566). "Any amount of damages, 'however slight,' triggers the accrual of the cause of action, and for this reason, 'it is immaterial that all of the damages resulting from the injury do not occur at the time of the injury.'" *Kerns*, 296 Va. at 159 (quoting *Van Dam v. Gay*, 280 Va. 457, 463 (2010)).

Applying these general principles, this Court recently held in *Rivera v. Mantech International Corp.*, 81 Va. App. 170 (2024), that an employee's cause of action under the VWPA accrued on the date his employer notified him that his employment was being terminated (the "prohibited retaliatory action"), even though the termination did not take effect until the month after the employee received his termination letter. *Id.* at 178. On appeal, Rivera argued that his termination was not an inevitable consequence of the termination letter because the letter advised him that he could continue to work for the same employer if he found another suitable position. *Id.* Thus, Rivera argued that his claim under the VWPA did not start to accrue until the day his termination took effect. *Id.* This Court rejected that argument, concluding that "[a]ny new position Rivera may have found would only have reduced the magnitude of Rivera's injury; it would not have wholly cured the allegedly retaliatory nature of the decision to eliminate Rivera's current position." *Id.*

Here, unlike in *Rivera*, Dr. Hollis was never explicitly notified by her employer that it was taking a definitive, adverse employment action against her that was certain to take effect in

the future. Had Ingleside unequivocally communicated to Dr. Hollis in March 2021 that she would no longer be scheduled to work, then this could have been sufficient to constitute a "prohibited retaliatory action," triggering the VWPA's statute of limitations. Here, however, when Dr. Hollis attempted to communicate with Ingleside about the status of her position, Ingleside did not engage in any meaningful communication with her, and the only information she was given was that there was a "case pending review." Under these circumstances, it cannot be said that either Dr. Hollis's realization in March 2021 that she had not been scheduled to work, or the very limited communications she subsequently received following her request for clarification, constituted an adverse employment action in themselves, akin to the notice of termination provided to the employee in *Rivera*. Given the general lack of information regarding Ingleside's true intentions, the trial court was not wrong to conclude that Dr. Hollis's cause of action under the VWPA did not accrue in March 2021.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and remand the case for further proceedings.

*Affirmed and remanded.*